## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Fontaine Dantzler and Thelma Pannell, Husband, and Wife, Individually, and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>FCA US LLC, DaimlerChrysler Service Contracts, Inc., Stellanis N.V. f/k/a Fiat Chrysler Automobiles  N.V.,  FCA North America Holdings LLC, FCA Holdco B.V, Fiat Chrysler Automobiles N.V., Chrysler Service Contracts, Inc., Old Carco Service Contracts, Inc., Chrysler Plymouth of Paramus Inc., Chrysler LLC, Daimler Chrysler Financial Services America LLC, Mopar Vehicle Protection, Lester Glenn Auto Group, ABC Corporations 1-10, and John Does 1 - 10,<br><br>       Defendants. | Case No.: 2:21-CV-06961 – MCA-LDW<br><br><br>Civil Action<br><br>**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

The plaintiffs, Fontaine Dantzler and Thelma Pannell, husband and wife ("plaintiffs"), on behalf of themselves and a putative class of similarly situated New Jersey purchasers described herein, allege the following based upon personal knowledge and/or based upon information and belief, including, *inter alia*, the investigation made by and through their attorneys.

## <u>NATURE OF THE ACTION</u>

1.  This is a class action brought by the plaintiffs on behalf of themselves and a class of similarly situated consumers.

2.  The proposed class is New Jersey consumers who purchased a Service Contract Agreement entitled "DaimlerChrysler Service Contract" and/or "Lifetime Maximum Care Wrap for

Lifetime Warranty Owners Plan Provisions." (hereinafter "Agreement", "Plan", "Lifetime Warranty", or "Lifetime Warranty Plan")

3.      The plaintiffs claim that they and the other class members sustained damages because the Lifetime Warranty was not properly honored. Instead, claims under the Lifetime Warranty were improperly denied.

4.      The plaintiffs also claim that they and the other class members sustained damages because they did not receive what they paid for.

5.      There may be sub-classes, including consumers who purchased at particular dealers and/or consumers who had to, or who will have to in the future, pay for repairs that should have been covered by the Lifetime Warranty.

6.      This Amended Complaint contains many different causes of action. All of the causes of action and all of the claims do not apply to every defendant. This Amended Complaint notes the Counts in the Amended Complaint that do not apply to Lester Glenn Auto Group and, within certain Counts, which actions or omissions apply to Lester Glenn Auto Group.

7.      The defendants (except for Lester Glenn Auto Group) marketed and sold the Service Contract Agreements entitled "DaimlerChrysler Service Contract" and/or "Lifetime Maximum Care Wrap for Lifetime Warranty Owners Plan Provisions" (hereinafter "Agreement" or "Plan") to the plaintiffs. Chrysler Plymouth of Paramus Inc. sold the Lifetime Warranty Plan to the plaintiffs. (Upon information and belief, Lester Glenn sold Agreements to other class members.)

8.      Plaintiffs and class members paid a substantial amount of money to purchase the Service Contract Agreements. In the plaintiffs' case, the purchase price was $1,790.00, plus tax of $125.30, for a total of $1,915.30. The Vehicle Identification Number for the plaintiffs' vehicle is 2C3LA43R27H877062. The vehicle is identified as a 2007 Chrysler 300 in the documents.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,  T: 201-225-9001, F: 201-225-9002

9.      The plaintiffs completed a DaimlerChrysler Service Contract Application, which was signed by plaintiffs and the dealer, Chrysler Plymouth of Paramus Inc. Daniel Basso signed for the dealer. The form states "retain this form as evidence you have applied for the plan(s) indicated above. The Dealer will transmit this data to DaimlerChrysler. DaimlerChrysler Service Contracts will notify you of acceptance by mailing your Plan Provisions." The entities identified in that application form include Chrysler Plymouth of Paramus, Inc., DaimlerChrylser Service Contracts, Inc., DaimlerChrysler Corporation, and DaimlerChysler Motors Company, LLC.

10.     The plaintiffs received correspondence advising them that their application for a service contract was accepted. The letter, in part, reads as follows:

> "CONGRATULATIONS! You are now covered by a genuine DAIMLERCHRYSLER SERVICE CONTRACT. You made a wise choice when you elected to protect your vehicle investment.
>
> The enclosed Plan Provisions are your actual Service Contract. They fully describe the coverage and features of your Plan and identify you and your vehicle as being eligible for Plan service.
>
> The personalized Plan Provisions should always be presented to your servicing dealer when requesting Plan service. We recommend that you keep your Plan Provisions with your vehicle's other important papers in the glove box at all times for prompt service
> .
> If you have any questions regarding the specific service contract you purchased, contact your selling dealer.
>
> Should you have questions about your service contract coverage or benefits that your dealer cannot answer, or need assistance obtaining Plan Service from a DaimlerChrysler Motors LLC dealer, please feel free to call us toll-free, 8:00 A.M. to 5:00 P.M. Monday through Friday.
>
> > 1-800-521-9922 In USA
> > 1-800-465-2001 In Canada
> > 1-800-457-4330 Hearing Impaired
>
> We sincerely hope you never need a covered component repair – but, if you do – you have the security of a DaimlerChrysler Service Contract.
>
> Ann Tomlanovich

3

President, DaimlerChrysler Service Contracts, Inc."

11.     The letter identifies DaimlerChrysler Service Contracts, Inc., DaimlerChrysler Motors, LLC, DaimlerChrysler Motors, LLC dealers, and the dealer that sold the service contract to the plaintiff, which was Chrysler Plymouth of Paramus, Inc., as entities that are responsible for the service and repairs under the lifetime warranty service contract.

12.     The "Plan Provisions" that the defendants provided to the plaintiffs are entitled "Lifetime Maximum Care Wrap For Lieftime Warranty Owners Plan Provisions." Research indicated that it is the highest level of warranty that the defendants provide to consumers. The defendants boast that it covers "5,000 components." A search online of the warranty protection provided by Official Mopar Vehicle Protection/Powered by Mopar states: "If it's mechanical, it's covered."

13.     The Plan is self-described as a "service contract" but it does not satisfy the New Jersey Service Contracts Act.

14.     The Plan states that service can be "from any Chrysler, Dodge or Jeep Dealer within the 50 States, the District of Columbia, Cananda, Guam, Puerto Rico, or Mexico." In this case, the plaintiffs took their vehicle to Lester Glenn Auto Group for repairs under the lifetime warranty but the dealer refused to provide the repair service because they were told that the warranty was voided because the plaintiffs did not have a "five year inspection" on the vehicle. Of course, the Plan does not require any such inspection. The plaintiffs were also told that the plan had been canceled.

15.     The Plan states that coverage is provided "for the lifetime of that original purchaser or retail lessee. The plan ends upon the death of that original purchaser or retail lessee or upon the transfer or sale of the vehicle." In this case, the plaintiffs are still alive and have not transferred or sold the vehicle. As such, the repairs and/or service in question were covered but they were improperly denied.

Gainey McKenna & Egleston, 375 *Abbott Road, Paramus, NJ 07652,*   T: 201-225-9001, F: 201-225-9002

16.     The Plan states that "no Dealer, Dealer employee or DaimlerChrysler employee has the authority to modify or change any provision of this Plan."

17.     The Plan states that it offers comprehensive mechanical coverage for the vehicle.

18.     The Plan includes a section on the consumer's responsibilities, which does not require the consumer to have the vehicle inspected every five years, or at any time, for the Plan to remain in effect. Despite that, the repairs to the plaintiffs' vehicle were improperly denied under the Lifetime Warranty Plan. The defendants (including Lester Glenn Auto Group) incorrectly, improperly, and unlawfully told the plaintiffs that the repairs and/or service were not covered because the plaintiffs were required to get the vehicle inspected every five years and/or at some point, even though there is no such requirement in the Plan.

19.     The Service Contract Agreement does not contain a monetary limit or a limit on the maximum amount of money for the repairs and/or service that the defendants are obligated to perform during the Term of the Agreement (which is the plaintiffs' lifetime).

20.     Likewise, the Service Contract Agreement does not contain a numerical limit or a limit on the maximum number of times that the defendants are obligated to repair a consumer's vehicle during the Term of the Agreement (which is the plaintiff's lifetime).

21.     Despite there being no time limit, money limit, or any similar limit for the Service Contract Agreement, the defendants have undisclosed policies, procedures, and practices that do limit the repairs to a consumer's vehicle. In particular, the defendants falsely claim that a consumer must have the vehicle  inspected after five years and/or at other times. The defendants use those false claims to deny repairs under the Lifetime Warranty Plan that should be covered.

22.     As a result of the defendants' policies, procedures, and practices, the plaintiffs and other consumers do not receive what they paid for under the Plan, which results in damage and ascertainable

5

loss to them. The plaintiffs' and the other consumers' damages and ascertainable loss include, but are not limited to, the amount paid for the Service Contract Agreements and/or the amount paid out of pocket for repair and/or service on their vehicles that should have been covered under the Plan.

23.     The Chrysler entity defendants (not Lester Glenn Auto Group or Chrysler of Paramus) had their authorized dealers sell the Lifetime Warranty Plans but over a period of years they decided that they did not like the obligations that they, and their dealers, had under the Plans. They decided to take actions to end their obligations, and the obligations of their dealers, even though it was improper, unlawful, and a breach of warranty and contract. The Chrysler entity defendants (not Lester Glenn Auto Group or Chrysler of Paramus) played shell games relating to the bankruptcy filing and their obligations to consumers. They tried to wipe clean their obligations through the bankruptcy and then afterwards the exact same companies were doing the exact same things all over again. They continued to sell lifetime warranties while fighting lawsuits by consumers trying to enforce prior warranty plans. The Chrysler entity defendants (not Lester Glenn Auto Group or Chrysler of Paramus) are denying their obligations in cases involving similar warranty claims about the lifetime powertrain warranties. The corporate shell games can be seen in their corporate disclosure filings, which show that the defendants are forming LLC's and companies to get farther and farther away from their obligations and legal duties. It should not be allowed.

24.     The post-bankrupcty actions by the Chrysler entity defendants (not Lester Glenn Auto Group or Chrysler of Paramus) are fraudulent, improper, deceptive, and unlawful. Those post-bankruptcy actions are not protected by prior Bankruptcy Court rulings and the defendants must answer to the claims for the post-bankruptcy improprieties.

25.     The defendants' actions and/or omissions constitute breach of contract and/or breach of warranty.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

26.    The defendants' actions and/or omissions, as well as Service Contract Agreement itself, were also in violation of the New Jersey Consumer Fraud Act ("NJCFA"), the New Jersey Service Contracts Act ("SCA"), and the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"). The defendants' actions and omissions that were in violation of those statutes and laws relate to the marketing and sale of the Agreement as well as the defendants' performance under the Agreement and to the defendants' concealed policies, practices, and procedures. (The Counts below specify which Counts apply to Lester Glenn and which do not.)

27.    The plaintiffs bring this action to recover damages sustained as a result of the defendants' breach of contract, brech of warranty, improper, fraudulent, unconscionable, deceptive, and illegal actions, omissions, and concealments, and for their violations of applicable laws, statutes, and regulations. The defendants' breach of contract and/or breach of warranty, their improper, fraudulent, unconscionable, deceptive, and illegal actions, and their violations of applicable laws, statutes, and regulations are in connection with: their marketing and sale of the Lifetime Warranty Plan; their policies, procedures, and practices relating to their performance under the Plan; their policies, procedures, and practices for determining their obligation to perform under the Plan; and their corporate shell games played to avoid liability to consumers. (Again, the Counts below specify which Counts apply to Lester Glenn and which do not.)

28.    Consumers who purchase the Lifetime Warranty Plan, including the plaintiffs, are damaged by the defendants' breach of contract and/or breach of warranty, their improper, fraudulent, unconscionable, deceptive, and illegal actions, omissions, and concealments, their violations of applicable laws, statutes, and regulations, and by their procedures, policies, and practices relating thereto. Statutory damages also apply to the defendants' breach of contract and/or breach of warranty, their improper, fraudulent, unconscionable, deceptive, and illegal actions, and their violations of

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

applicable laws, statutes, and regulations. As a result, the plaintiffs and the class members are entitled to a refund of the money they paid to the defendants for the Lifetime Warranty Plan and/or other damages. In addition, the applicable laws, statutes, and regulations include provisions for statutory damages, mandatory treble damages, and mandatory attorney's fees to be paid by the defendants. As a result, the damages sustained by the plaintiffs and other consumers will be trebled and the plaintiffs' attorney's fees will be paid by the defendants.

29.    The plaintiffs also seek a declaratory judgment that the Agreements that the defendants sold and/or sell to consumers are contrary to New Jersey law and should be voided and rescinded, with the consumers receiving a refund.

30.    The plaintiffs seek the following relief:

(a)    An award of appropriate damages for all members of the class who entered into the service contract agreements with the defendants and who paid the defendants pursuant to that Plan, which may include a refund of the money paid for the Plan and/or any other money paid out of pocket;

(b)    An award of treble damages, punitive damages, and attorney's fees pursuant to the New Jersey Consumer Fraud Act and/or other laws;

(c)    An award of statutory damages pursuant to the Truth in Consumer Contract, Warranty and Notice Act and/or other laws;

(d)    An injunctive order prohibiting the defendants from engaging in the same improper acts in the future based on the New Jersey Consumer Fraud Act, the Truth in Consumer Contract, Warranty and Notice Act, and/or other grounds;

(e)    Disgorgement from the defendants of all monies wrongfully obtained as

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

a result of the defendants' breach of contract and/or breach of warranty, and improper, unfair, and deceptive business acts;

(f)    Certification of a Class (and/or Sub-Classes) as described herein or as the Court deems proper and just pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(g)    Designation of the plaintiffs' counsel as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(h)    Designation of the plaintiffs, and/or other class members, as Class Representative(s) pursuant to 23 of the Federal Rules of Civil Procedure;

(i)    An award of attorney's fees and case expenses to Class Counsel; and

(j)    Such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

31.    This Court has personal jurisdiction over the parties in this action.

32.    This Court has subject matter jurisdiction over this action.

33.    The original Complaint was filed in New Jersey State Court, County of Bergen, and the defendant, Lester Glenn Auto Group, removed the case to Federal Court.

## THE PARTIES

34.    The plaintiffs, Fontaine Dantzler and Thelma Pannell, are residents of New Jersey. Their purchase of a Chrysler vehicle and a Service Contract Agreement ("Lifetime Warranty Plan") gave rise to this case. Speicific details concerning the vehicle, the Agreement, and the role of the defendants are below in this section of the Complaint and in other sections.

35.    The Lifetime Warranty Plan that the plaintiffs purchased identifies the main party entering into the agreement with the plaintiffs as DaimlerChrysler Service Contracts, Inc. A network of

9

Chrylser, Dodge, and Jeep dealers have obligations to repair and/or service vehicles under the Plan, as stated in the Plan.

36.     Upon information and belief, DaimlerChrysler Service Contracts, Inc. was one of many "Chrysler entities" that were involved over many years in the company that the public knew as "Chrysler."

37.     Upon information and belief, DaimlerChrysler Service Contracts, Inc., other Chrysler entities, and authorized dealers sold Chrysler cars and related warranty agreements.

38.     There was also a network of dealers, including Chrysler, Dodge, and/or Jeep dealers, who were involved in the sale and service of Chrysler vehicles and who were involved in the sale of warranty agreements.

39.     Upon information and belief, those dealers were also involved in the fulfillment or honoring of those warranty agreements when Chrysler vehicles needed service covered by  the warranties.

40.     Upon information and belief, those dealers were also obligated to fulfill or honor those warranty agreements when Chrysler vehicles needed service covered by  the warranties.

41.     The warranty document refers specifically to a network of Chrysler, Dodge, and Jeep dealers. (Additional factes relating ot the Lifetime Warranty Plan are below.)

42.     Upon information and belief, the defendant, Lester Glenn Auto Group, was one of those dealers. (Additional facts relating to Lester Glenn Auto Group are below.)

43.     Upon information and belief, the defendant, Chrylser Plymouth of Paramus, Inc., was also one of those dealers. (Additional facts relating to Chrylser Plymouth of Paramus, Inc. are below.)

44.     Upon information and belief, some of those dealers in that network were franchised or licensed by one of the parent Chrysler companies while other dealers were company-owned.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

45.     Upon information and belief, all of those dealers were authorized to sell vehicles and warranties.

46.     Upon information and belief, dealers in the network of Chrysler, Dodge, and Jeep dealers were also obligated to perform service covered by Lifetime Warranty Plans such as the one sold to the plaintiffs.

47.     Upon information and belief, those dealers have certain obligations to the parent Chrysler companies and to consumers who purchase vehicles and warranties.

48.     Upon information and belief, at some point, Daimler Chrysler Service Contracts, Inc. changed its name to Chrysler Service Contracts, Inc. and also changed its name to Old Carco Service Contracts, Inc.

49.     Upon information and belief, Old Carco Service Contracts, Inc. filed for bankruptcy.

50.     Upon information and belief, FCA US LLC purchased some of the assets and assumed some of the obligations related to warranties sold by Old Carco Service Contracts, Inc. and/or other entities.

51.     The 13 named defendants and the fictitious defendants are named in this Amended Complaint because, upon information and belief, they are successor companies and/or were involved in the sale of, fulfillment and honoring of, and the decision-making related to, warranties sold by Chrysler entities including Daimler Chrysler Service Contracts Inc. and authorized dealers. Additional information is needed to sort out the numerous entities that were involved. The corporate shell games and other actions taken to avoid liability make it difficult to determine with certainty which companies should be named in the lawsuit and discovery will be necessary to sort out the entities.

52.     Upon information and belief, the defendant, FCA US LLC (hereinafter "FCA US", "FCA" and/or included within "defendants"), is a limited liability company organized under Delaware

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

law, with its principal place of business being located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

53.    Upon information and belief, FCA US LLC is a Delaware limited liability company.

54.    Upon information and belief, FCA US LLC has one member, which is FCA North America Holdings, LLC.

55.    Upon information and belief, FCA North America Holdings LLC has one member, which is FCA Holdco B.V.

56.    Upon information and belief, FCA Holdco B.V. is wholly owned by Fiat Chrysler Automobiles N.V.

57.    Upon information and belief, Fiat Chrysler Automobiles N.V. is a publicly held company.

58.    Upon information and belief, Fiat Chrysler Automobiles N.V. is the indirect parent of FCA North America Holdings LLC.

59.    Upon information and belief, the defendant Stellantis N.V. was formerly known as Fiat Chrylser Automobiles N.V.

60.    Upon informmaiton and belief, , Stellantis N.V. is a publicly held company.

61.    Upon informmaiton and belief, Stellantis N.V. is the indirect parent of FCA North America Holdings LLC.

62.    Upon information and belief, Stellantis N.V. (f/k/a Fiat Chrylser Automobiles N.V.), owns FCA Holdco B.V. (which is the sole member of FCA North America Holdings LLC, which is the sole member of defendant, FCA US LLC)

63.    Upon information and belief, the defendants, DaimlerChrysler Service Contracts, Inc., Chrysler Service Contracts, Inc., Chrysler LLC, Daimler Chrysler Financial Services America LLC,

and/or Mopar Vehicle Protection   (hereinafter included within "Chrylser entity defendants") are Chrysler entities that were involved in the marketing and sale of the Lifetime Warranty Plan service contract agreements sold on Chrysler vehicles and in the decision-making relating to repairs and/or service under the Plans.

64.    Upon information and belief, the defendants, DaimlerChrysler Service Contracts, Inc., Chrysler Service Contracts, Inc., Chrysler LLC, Daimler Chrysler Financial Services America LLC, and/or Mopar Vehicle Protection   (hereinafter included within "defendants") are Chrysler entities that were involved in the implementation and coordination of the marketing, sale, and honoring of the Lifetime Warranty Plan service contract agreements sold on Chrysler vehicles.

65.    The 13 defendants named in the Complaint can be separated into two categories:

(1) the 11 Chrysler entities which were not dealers:

(i) FCA US LLC;

(ii) DaimlerChrysler Service Contracts, Inc.;

(iii) Stellantis N.V. f/k/a Fiat Chrylser Automobiles N.V.;

(iv) FCA North America Holdings LLC;

(v) FCA Holdco B.V.

(vi) Fiat Chrylser Automobiles N.V.

(vii) Chrysler Service Contracts, Inc.;

(viii) Old Carco Service Contracts, Inc.,

(ix) Chrysler LLC;

(x) Daimler Chrysler Financial Services America LLC,

(xi) Mopar Vehicle Protection

(2) the 2 dealers who sold and/or serviced Chryslers and related vehicles as well as the lifetime

13

warranties sold with those vehicles:

      (i) Chrysler Plymouth of Paramus, Inc.;

      (ii) Lester Glenn Auto Group.

    66.    Upon information and belief, the two "dealer defendants" (Chrysler Plymouth of Paramus, Inc. and Lester Glenn Auto Group) were both within the network of authorized Chrysler, Dodge, and/or Jeep dealers which were authorized to market, sell, and service Chrysler vehicles and to market, sell, implement coordinate, and honor the Lifetime Warranty Plans sold in connection with Chrysler vehicles at the relevant times in this case. (Specific dates involved in this case are described in detail below.)

    67.    Chrysler Plymouth of Paramus, Inc. was the dealer defendant that was involved in the sale of the Chrysler vehicle involved in this case to the plaintiff. (Specific details about that sale and that vehicle are described in detail below.)

    68.    Chrysler Plymouth of Paramus, Inc. was the dealer defendant that was involved in the sale of the Lifetime Warranty Plan involved in this case to the plaintiff. (Specific details about that sale and that warranty plan are described in detail below.)

    69.    Upon information and believe, the defendant, Chrysler Plymouth of Paramus Inc., (hereinafter "Chrysler Paramus") is an authorized dealer of Chrysler automobiles and was at the time that the plaintiff purchased the vehicle and Lifetime Warranty Plan involved in this matter.

    70.    Chrysler Paramus was authorized to market, sell, and honor the Lifetime Warranty Plans like the one that they sold to the plaintiffs on behalf of one or more of the Chrysler entities which are non-dealer defendants.

    71.    Lester Glenn Auto Group was the dealer defendant that was involved in the plaintiff's attempts to obtain repairs and/or service of his Chrysler vehicle under the Lifetime Warranty Plan.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

72.    Lester Glenn Auto Group was the dealer defendant that was involved in the denial of repairs and/or service of the plaintiff's Chrysler vehicle under the Lifetime Warranty Plan even though plaintiffs and class members were entitled to repairs and/or service under the Plans that they purchased. (Specific details about the attempts to obtain service under the Lifetime Warranty Plan and the denial of service are described in detail below.)

73.    Upon information and belief, Lester Glenn Auto Group discussed the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan with one or more of the non-dealer Chrysler entities which are named defendants.

74.    Upon information and belief, Lester Glenn Auto Group implemented and/or effectuated the denial of the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan.

75.    Upon information and belief, Lester Glenn Auto Group was involved in the decision to deny the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan even though the plaintiffs were entitled to repairs and/or service under the Plan.

76.    Upon information and belief, Lester Glenn Auto Group communicated the denial of the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan to the plaintiff at the direction of one or more of the non-dealer Chrysler entities which are named defendants.

77.    Upon information and belief, Lester Glenn Auto Group was involved with the denial of the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan in conjunction with one or more of the non-dealer Chrysler entities which are named defendants.

78.    Upon information and believe, the defendant, Lester Glenn Auto Group, (hereinafter "Lester Group" is an authorized dealer of Chrysler automobiles and was at the time that the plaintiff purchased the vehicle and Lifetime Warranty Plan involved in this matter.

79.    Upon information and believe, the defendant, Lester Glenn Auto Group, was an

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,    T: 201-225-9001, F: 201-225-9002

authorized dealer of Chrysler automobiles and was at the time that the plaintiff was denied service and/or repairs under the Lifetime Warranty Plan involved in this matter.

80.    Upon information and believe, the defendant, Lester Glenn Auto Group, was an authorized dealer within the network of dealers who were authorized and obligated to implement, honor, and perform repairs and/or service under the under the Lifetime Warranty Plan involved in this matter.

81.    Upon information and believe, the defendant, Lester Glenn Auto Group, was an authorized dealer as described in the preceding paragraph on the date that the plaintiffs went to Lester Glenn and requested repairs and/or service on their Chrysler vehicle under the under the Lifetime Warranty Plan involved in this matter.

82.    The defendant, Lester Glenn Auto Group, (hereinafter "Lester Group"), is an authorized dealer of Chrysler automobiles and was at the time that the plaintiff purchased the vehicle and Lifetime Warranty Plan involved in this matter. Lester Group was also involved in the decisions to deny coverage to plaintiffs and class members even though plaintiffs and class members were entitled to repairs and/or service under the Plans that they purchased and/or took directions from other defendants relating thereto.

83.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) were involved in the plaintiff's attempts to obtain repairs and/or service of his Chrysler vehicle at Lester Glenn under the Lifetime Warranty Plan.

84.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) were involved in the denial of repairs and/or service of the plaintiff's Chrysler vehicle at Lester Glenn under the Lifetime Warranty Plan even though plaintiffs and class members were entitled to repairs and/or service under the Plans that they purchased. (Specific details

16

about the attempts to obtain service under the Lifetime Warranty Plan and the denial of service are described in detail below.)

85.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) discussed the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan with Lester Glenn Auto Group.

86.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) implemented and/or effectuated the denial of the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan.

87.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) were involved in the decision to deny the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan even though the plaintiffs were entitled to repairs and/or service under the Plan.

88.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) communicated the denial of the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan to the plaintiff in conjunction with Lester Glenn Auto Group.

89.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) were involved with the denial of the plaintiff's request for repairs and/or service under the Lifetime Warranty Plan in conjunction with Lester Glenn Auto Group.

90.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are not dealers (see the list above) controlled and/or impacted the decisions by authorized dealers within the network of dealers who were authorized and obligated to implement, honor, and perform repairs and/or service under the under the Lifetime Warranty Plan involved in this matter.

91.    Upon information and belief, one or more of the 11 Chrysler entity defendants who are

Gainey McKenna & Egleston, 375 *Abbott Road, Paramus, NJ 07652*,    T: 201-225-9001, F: 201-225-9002

not dealers (see the list above) had to approve and/or authorize the decisions by authorized dealers within the network of dealers who were authorized and obligated to implement, honor, and perform repairs and/or service under the under the Lifetime Warranty Plan involved in this matter.

92.    The true names and capacities of the defendants sued herein as ABC Corporations 1 – 10 and John Does 1 – 10 (hereinafter included within "defendants") are presently unknown to plaintiffs, who therefore sue these defendants by such fictitious names. The names of those fictitious defendants are unknown because of the corporate shell games that the Chrysler entity defendants who are not dealers were involved in before and after the plaintiffs' purchase of the Chrysler vehicle and the Lifetime Warranty Plan involved in this case.

93    At all times alleged herein, the fictitious defendants were agents, related companies, successor companies, acquiring companies, and/or otherwise related to or acting on behalf of the 11 Chrysler entity defendants who are not dealers (see the list above). These fictitious defendants are legally responsible in some manner for the breaches of contract and/or warranty, and the improper and unlawful acts and omissions involved in this case. The plaintiffs will amend this Complaint and include these unknown defendants' true names and capacities if necessary after they are ascertained. Each of the fictitiously-named defendants are parent companies or otherwise related companies and/or are responsible in some manner for the conduct alleged herein, including the corporate shell games played, and for the damages suffered by plaintiffs and other consumers who are class members.

## **FACTUAL BACKGROUND**

94.    The plaintiffs purchased a 2007 Chrysler 300 from Chrysler Paramus in or about September of 2007. The Vehicle Identification Number for the plaintiffs' vehicle is 2C3LA43R27H877062. A copy of the Retail Installment Contract for the purchase is attached to this Amended Complaint.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652, T: 201-225-9001, F: 201-225-9002

95.    The plaintiffs entered into a Service Contract Agreement entitled "DaimlerChrysler Service Contract" and/or "Lifetime Maximum Care Wrap for Lifetime Warranty Owners Plan Provisions" with DaimlerChrysler Service Contracts, Inc. and/or one or more of the 11 Chrysler entity defendants who are not dealers (see the list above). A copy of the Lifetime Waranty Plan sold to the plaintiffs, and the letter with which the warranty was sent to the plaintiff, are attached to this Amended Complaint).

96.    The defendant dealer, Lester Glenn Auto Group, was not involved in the sale of the Lifetime Warranty Plan to the plaintiff.

97.    Upon information and belief, on the date that the plaintiff purchased the Lifetime Warranty Plan, the defendant Lester Glenn Auto Group was in the network of dealers who were authorized and obligated to implement, honor, and perform repairs and/or service under the under the Lifetime Warranty Plan.

98.    The Lifetime Warranty Plan includes the following provisions:

-    "This plan is a service contract between you and us. It protects you against major repair bills should a component covered by the plan fail in normal use. "

-    **OBTAINING PLAN SERVICE:** Plan service will be provided or assisted by the Dealer who sold you the plan, at his place of business, using new or authorized remanufactured parts. In the event that you cannot return to the selling Dealer for service, you may request service from any Chrysler, Dodge or Jeep Dealer within the 50 states, the District of Columbia, Canada, Guam, Puerto Rico or Mexico.

-    The plan offers mechanical coverage as specified to the named original purchaser or retail lessee of the vehicle only for the lifetime of that original purchaser or retail lessee. The plan ends upon the death of that original purchaser or retail lessee or

19

upon the transfer or sale of the vehicle.

- **This plan offers comprehensive mechanical coverage for your vehicle. COMPONENTS COVERED BY THE PLAN INCLUDE (BUT ARE NOT LIMITED TO):**

- **FRONT SUSPENSION:** struts, strut mounting plates, bushings and bearings, upper and lower control arms, control arm shaft, control arm bushings, upper and lower ball joints, front wheel bearings.

99.    In or around April of 2020, the plaintiffs' Chrysler vehicle needed service and/or repairs, including work on the bearings in the left and right front.

100.    The plaintiffs took the vehicle to Lester Glenn Auto Group, which is one of the dealer defendants named in this amended complaint.

101.    Upon information and belief, Lester Glenn Auto Group is one of the "Chrysler, Dodge, or Jeep dealers within the 50 states, the District of Columbia, Canada, Guam, Puerto Rico or Mexico" who are identified in the warranty agreement as being authorized, and obligated, to do service and/or repair work for consumers who purchased a Lifetime Warranty Plan for their Chrysler vehicle.

102.    Lester Glenn Auto Group examined the plaintiff's vehicle.

103.    Lester Glenn Auto Group examined the repairs and/or services that were being requested by the plaintiffs pursuant to the Lifetime Warranty Plan.

104.    Upon information and belief, Lester Glenn Auto Group communicated with one or more of the Chrysler entity defendants who are not dealers (see list above) concerning the plaintiffs' request for repairs and/or service under the Lifetime Warranty Plan.

105.    Upon information and belief, one or more of those Chrysler entity defendants decided and/or directed Lester Glenn Auto Group to decide that the plaintiffs' request for repairs and/or

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,  T: 201-225-9001, F: 201-225-9002

services should be denied under the Lifetime Warranty Plan.

106.    The plaintiffs were told that the denial of the request for repairs and/or services under the Lifetime Warranty Plan was based upon an alleged requirement in the Lifetime Warranty Plan that the plaintiffs have their vehicle inspected every 5 years.

107.    In reality, the Lifetime Warranty Plan does not have such a requirement for an inspection every 5 years.

108.    Upon information and belief, Lester Glenn Auto Group told the plaintiffs that their Lifetime Warranty Plan had been canceled and was no longer in effect.

109.    As a result of the improper denial of the requested repairs and/or service under the Lifetime Warranty Plan, the plaintiffs had to have the repairs and/or service done by someone other than Lester Glenn Auto Group.

110.    The plaintiffs had to pay for those repairs and/or service and were damaged as a result.

111.    The plaintiffs sustained ascertainable losses as a result of the improper denial of their request for repairs and/or service under the Lifetime Warranty Plan, including, but not limited to, the money that they paid for the warranty and the money that they had to pay for the repairs and/or service to the Chrysler vehicle that should have been covered under the Lifetime Warranty Plan.

112.    The plaintiffs did not receive what they paid for because the lifetime warranty that they purchased is not being honored but instead is being improperly denied.

113.    Plaintiffs were still alive at that time and, thus, the lifetime warranty plan was still in effect pursuant to its own terms.

114.    Plaintiffs paid a substantial amount of money to purchase the Lifetime Warranty Plan. In particular, the plaintiffs paid the purchase price of $1,790.00, plus tax of $125.30, for a total payment of $1,915.30.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

115.     The plaintiffs completed a DaimlerChrysler Service Contract Application, which was signed by plaintiff and the dealer from which the plaintiffs purchased the Chrysler vehicle in question.

116.     Daniel Basso signed for the dealer.

117.     The plaintiffs subsequently received their Lifetime Warranty Plan with a cover letter. (A copy of both are attached to this Amended Complaint.)

118.     Thus, the service contract agreement that the defendants had the plaintiffs apply for was approved and the sale was completed.

119.     The plaintiffs had some repairs and/or service done after purchasing the vehicle and the service contract agreement, which were initially covered under the Lifetime Warranty Plan.

120.     Some of the repairs and/or service that weres done on plaintiffs vehicle under the Lifetime Warranty Plan was on April 16, 2018, November 26, 2018, and August 21, 2019.

121.     Thereafter, on April 24, 2020, the plaintiffs took the vehicle to Lester Group for repair and/or service, which should have been covered under the Lifetime Warranty Plan.

122.     Even though Lester Glenn Auto Group did not sell the Lifetime Warranty Plan to the plaintiffs, Lester Glenn Auto Group was obligated to honor the Lifetime WarrantyPlan and perform the repairs and/or service requested by the plaintiffs.

123.     Lester Glenn Auto Group was obligated to perform the repairs and/or service because they are in the network of dealers who are obligated to perform service for Chrysler vehicles like the plaintiffs' pursuant to the express terms of the Lifetime Warranty Plan.

124.     Lester Glenn improperly refused to perform the repairs and/or services as covered work under the Lifetime Warranty Plan.

125.     The plaintiffs were told that the claim under the Lifetime Warranty Plan was denied and the Plan was cancelled because the plaintiffs did not have a five year inspection done. However, there

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

is no requirement in the Plan for a five year inspection.

126.    The   denial of repairs and/or service under the Lifetime Warranty Plan and the cancellation of the plaintiffs' Plan was a breach of warranty, a breach of contract, a violation of numerous laws, including the New Jerey Consumer Fraud Act, the services Contract Act, the TCCWNA, and/or other appliable laws, statutes, and regulations. (As noted in the Counts below, all claims to not apply to Lester Glenn Auto Group.)

127.    The plaintiffs had to have the repairs and/or service done elsewhere and had to pay for the work done because of improper denial of the repairs and/or service under the Plan and the improper cancellation of the Plan. As such, the plaintiffs were damaged and sustained ascertainable loss, including the amount paid for repairs and/or service that should have been covered under the Lifetime Warranty Plan, future repairs and/or service that should be covered under the Lifetime Warranty Plan, and the money paid for the Plan.

128.    In particular, the plaintiffs had the repairs and/or service performed on or about April 26, 2020. The repairs and/or service cost $820.00. The repairs and/or service was for "bearings left and right front."

129.    The plaintiffs subsequently attempted to obtain records concerning their vehicle from Chrysler Paramus and, although they admitted that plaintiffs were in the system and had repairs and/or service in 2016 and/or at other times, the plaintiffs were told that Chrysler Paramus would "get in trouble" if they gave the records to the plaintiffs. They were also told that "Chrysler" is trying to "do away with the Lifetime Warranty Plans."

130.    The Plan and the documents relating to it admit by their own terms that the Lifetime Warranty Plan is a Service Contract Agreement. Thus, it is subject to the terms of the New Jersey Service Contracts Act. However, the Plan does not comply with the Act and is in violation of it.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

131.    The plaintiffs paid for repairs and/or service during the time when the repairs and/or service should have been covered by the Lifetime Warranty Plan.

132.    The plaintiffs had to pay for the repairs and/or service because their request to have it done pursuant to the Lifetime Warranty Plan was improperly refused.

133.    The policy, procedures, and practices of the Chrysler entity defendants (the non-dealer defendants) are to deny coverage under the Lifetime Warranty based upon an improper and unsupported position that the customer did not have a five year inspection on the vehicle even though the Plan does not contain such a requirement.

134.    Lester Glenn Auto Group implemented, effectuated, went along with, and/or participated in the improper denial of repairs and/or service under the Lifetime Warranty Plan.

135.    As admitted to the plaintiffs, Chrysler is "trying to do away with" the Lifetime Warranty Plans that they sold to consumers like the plaintiffs.

136.    The Chrylser entity defendants are willing to act improperly and unlawfully, and are willing to breach the warranty and the contract, in order to "do away with" their Plans sold to consumers.

137.    Lester Glenn Auto Group is willing to go along with the Chrysler entity defendants' improper policies, procedurs, and practices even though they were obligated to do the repair and/or services under the Lifetime Warranty Plan.

## CLAIMS

Pursuant to notice pleading, plaintiffs hereby allege each and every cause of action and remedy at law or in equity supported by the facts alleged in this Complaint.  Those causes of action and remedies at law or in equity include the following:

## COUNT ONE
### (Violations of the New Jersey Consumer
### Fraud Act, N.J.S.A. 56:8-1, et seq.)

138.    This Count and cause of action applies to all of the defendants, including Lester Glenn Auto Group. The actions and/or omissions by Lester Glenn Auto Group that were in violation of the New Jersey Consumer Fraud Act are noted in this Count as are the actions and/or omissions that were not by Lester Glenn Auto Group.

139.    The plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

140.    The New Jersey Consumer Fraud Act prohibits unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.

141.    The defendants violated the Act by the actions and/or omissions described herein.  The defendants' actions and/or omissions were unconscionable, deceptive, and/or fraudulent and they constitute false pretense, false promise and/or misrepresentations. The defendants' actions and/or omissions also constitute knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission. The defendants violated the New Jersey Consumer Fraud Act and otherwise acted improperly and in a manner that damaged the plaintiffs. The defendants' actions and omissions are described in detail in this Complaint and those descriptions elsewhere are expressly incorporated into this Count and every Count. That incorporation is specifically noted here to avoid a frivolous motion to dismiss by the defendants based on arguments that this Count does not provide specific details of the New Jersey Consumer Fraud Act violations.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

142.    <u>Violations by All of the Defendants **Except for Lester Glenn Auto Group**</u>: The violations by all of the defendants except for Lester Glenn Auto Group included, but are not limited to, knowingly making representations and misrepresentations in the Lifetime Warranty Plan that defendants sold to plaintiffs and other consumers, and/or elsewhere, including that the Agreement is effective for the plaintiffs' lifetime, that defendants will provide repair and/or service during the plaintiffs' lifetime, that there was no monetary limit or a limit on the maximum amount of money for the repairs and/or service that the defendants are obligated to perform under the Plan, that there was no requirement for a five year inspection, and that the defendants' policies, practices, and procedures are contrary to the representations in the Agreement.

143.    <u>Violations by All of the Defendants **Including Lester Glenn Auto Group**</u>: The violations by all of the defendants, including Lester Glenn Auto Group, included, but are not limited to, improperly denying the plaintiffs' claims for repair and/or service under the Plan and incorrectly and improperly taking the position that the plaintiffs' claims were not covered under the Plan based upon the unsupported position that the plaintiffs failed to have a five year inspection, even though there is no requirement for a five year inspection under the Plan. Such actions are deceptive, unconscionable, and/or fraudulent and caused damage to the plaintiffs.

144.    Upon information and belief, Lester Glenn Auto Group also violated the New Jersey Consumer Fraud Act by deciding to deny the plaintiffs' request for repairs and/or service.

145.    Upon information and belief, Lester Glenn Auto Group also violated the New Jersey Consumer Fraud Act by going along with, implementing, effectuating, and/or communicating the decision to deny the plaintiffs' request.

146.    Lester Glenn Auto Group is liable under the New Jersey Consume Fraud Act even though they did not sell the Lifetime Warranty Plan to the plaintiffs because they were obligated under

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

the terms of the plan to perform the repairs and/or service.

147.    Lester Glenn was so obligated because they are one of the dealers in the network of dealers identified in the Plan as being obligated to perform repairs and/or service when consumers like the plaintiffs request repairs and/or service that is covered under the Plan.

148.    Lester Glenn Auto Group is liable under the New Jersey Consume Fraud Act even though they did not sell the Lifetime Warranty Plan to the plaintiffs because their actions relating to the denial of the plaintiffs' request for repairs and/or service were improper, unconscionable, fraudulent, and constituted a deceptive business practice.

149     The defendants' actions and/or omissions (as limited above to certain defendants for certain claims) constitute violations of the New Jersey Consumer Fraud Act and have caused the plaintiffs to sustain damages and ascertainable losses in at least the amount of money that the plaintiffs paid for the Plan and/or in the amount paid by the plaintiffs for repairs and/or service that the defendants should have paid and/or covered under the Plan.

150.    The defendants' violations of the New Jersey Consumer Fraud Act subject them to the mandatory treble damages and the mandatory attorney's fees provisions of the Act.

151.    The plaintiffs was caused to suffer damages as a result of defendants' acts and/or omissions, including ascertainable losses.

152.    The New Jersey Consumer Fraud Act is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

153.    The defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading practices as described in this Complaint (as limited above to certain defendants for certain claims).

154.    The defendants violated the Consumer Fraud Act by the actions, omissions and

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

practices described herein, which were unconscionable, deceptive, and/or fraudulent and which constituted false pretense, false promise and/or misrepresentations. (as limited above to certain defendants for certain claims)

155.    The defendants' actions and/or omissions also constitute knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omissionmisrepresentations, actions, failures and/or omissions. (as limited above to certain defendants for certain claims)

156.    The defendants' acts and practices were deceptive, fraudulent, false, concealing and/or misleading.   The defendants made misrepresentations to the plaintiffs, both affirmatively and by omission. (as limited above to certain defendants for certain claims)

157.    The defendants' acts and/or omissions were in violation of the New Jersey Consumer Fraud Act and the plaintiffs have been damaged and are entitled to damages.

158.    The defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting plaintiffs and other consumers.

159.    As a result of the foregoing acts, omissions, and practices, the plaintiffs have suffered an ascertainable loss.   The plaintiffs are entitled to recover damages, together with appropriate penalties, including treble damages, attorney's fees, and costs of suit.

160.    The plaintiffs should also be awarded treble damages and attorneys' fees pursuant to the mandatory provisions of the New Jersey Consumer Fraud Act.

161.    The defendants have engaged in and continues to engage in unfair and deceptive trade acts and practices that have directly, foreseeably, and proximately caused damages and injury to the plaintiffs. (as limited above to certain defendants for certain claims)

162.    The Plan provides coverage for the plaintiffs' repairs and/or service that were

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

wrongfully denied for improper reasons.

163.    The defendants' wrongful actions and their wrongful failures to act include, but are not limited to, their unsupported decision to deny the claims for repair and/or service based on the unsupported position that the Plan requires a five year inspection. Such actions are deceptive and unconscionable and caused damage to the plaintiffs. (as limited above to certain defendants for certain claims)

164.    The defendants' conduct, policies, practices, and procedures, including but not limited to, the use of unfair and unconscionable claims processing tactics and strategies, and the unsupported decision to deny the plaintiffs's claims for repairs and/or services, and their corporate shell games are deceptive and unconscionable and caused damage to the plaintiffs. (as limited above to certain defendants for certain claims)

165.    The defendants' actions and/or omissions amount to unconscionable commercial practices, deception, fraud, misrepresentations, false promises, false pretenses, and/or the knowing concealment, suppression or omission, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (as limited above to certain defendants for certain claims)

166.    The defendants acted willfully and/or knowingly and/or negligently. By virtue of the foregoing, the plaintiffs have been damaged. (as limited above to certain defendants for certain claims)

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, treble damages, attorney's fees, costs and disbursements of this action.

## COUNT TWO
### (Breach of Express Warranty)

167.    This Count and cause of action does not apply to Lester Glenn Auto Group. It applies to the other defendants.  The term "defendants" as used in this Count refers to all defendants except for Lester Glenn Auto Group.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

168.     Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

169.     Defendants are "merchants" with respect to motor vehicles under <u>N.J.S.A.</u> 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

170.     The vehicles in question are "goods" within the meaning of <u>N.J.S.A.</u> 12A:2-105(1) and 2A-103(1)(h).

171.     Defendants expressly warranted that the vehicles were covered by the Lifetime Warranty Plan and defendants promised to cover the cost of repairs and/or service needed on the vehicle during the plaintiffs' lifetime.

172.     The promises, affirmations, and/or representations made by the defendants' are part of the basis of the bargain and enticed plaintiffs and other consumers to purchase the product in that the Lifetime Warranty formed the basis of the bargain reached when plaintiffs and class members purchased the vehicles in question and the Lifetime Warranty Plans.

173.     The defendants breached the Lifetime Warranty Plan by refusing the plaintiffs' claims for repair and/or service for their vehicle as described herein without a legitimate reason or basis.

174.     The defendants warranty fails in its essential purpose because the contractual remedy is insufficient to make plaintiffs and class members whole and because defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

175.     The defendants breached express warranties, as codified in <u>N.J.S.A.</u> 12A:2-313 and other applicable State statutes, and the breach has caused damage to the plaintiff and to class members.

176.     Defendants breached their express warranties because the products were not as promised and did not conform to the promises, affirmations and/or representations.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

177.    As a result of the defendants' breach, the plaintiffs and class members have sustained monetary and non-monetary damages.

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, treble damages, attorney's fees, costs and disbursements of this action.

## COUNT THREE
### (Breach of Contract/Common Law Warranty)

178.    This Count and cause of action does not apply to Lester Glenn Auto Group. It applies to the other defendants. The term "defendants" as used in this Count refers to all defendants except for Lester Glenn Auto Group. The term "parties" as used in this Count refers to the plaintiffs and all defendants except for Lester Glenn Auto Group. To the extent that any of the Chrylser entity defendants were not party to the agreement, they are liable as sucessors and/or based upon an assumption of liabilities of one or more of the other Chrysler entity defendants.

179.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

180.    The parties entered into a contract, which was the Lifetime Warranty Plan.

181.    The defendants accepted money from the plaintiffs as part of the contract.

182.    The defendants breached the contract and the common law warranty when they wrongfully denied the plaintiffs' claims for repair and/or service despite the terms of the Plan not providing a legitimate reason or basis for such a denial.

183.    The plaintiffs have been damaged by the defendants' breach of contract and/or common law warranty.

184.    The plaintiffs' damages include the amount of money that the plaintiffs paid to the defendants for the Plan and/or the amount of money paid for repairs and/or service that should have

31

been covered under the Plan.

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, treble damages, attorney's fees, costs and disbursements of this action.

## COUNT FOUR
### (Breach of the Covenant of
### Good Faith and Fair Dealing)

185.    This Count and cause of action does not apply to Lester Glenn Auto Group. It applies to the other defendants. The term "defendants" as used in this Count refers to all defendants except for Lester Glenn Auto Group. The term "parties" as used in this Count refers to the plaintiffs and all defendants except for Lester Glenn Auto Group. To the extent that any of the Chrylser entity defendants were not party to the agreement, they are liable as sucessors and/or based upon an assumption of liabilities of one or more of the other Chrysler entity defendants.

186.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

187.    The plaintiffs were in contractual privity with the defendants.

188.    Covenants of good faith and fair dealing are implied and arise when parties enter into contracts, such as the ones between the plaintiffs and the defendants, and such covenants arose in this matter.

189.    The plaintiffs acted in good faith and fairly but the defendants failed to act in good faith or fairly when performing under the contract, including failing to render timely and/or valid and/or effective performance and/or by failing to render full and complete performance under the terms, warranties, and/or guarantees of the contracts and/or by concealing or misrepresenting the respective parties' obligations and duties under the contracts and ability and/or willingness and/or intention to

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

perform under same, and by misrepresenting and/or concealing their policies, practices, and procedures and their unsupported limitation of their obligations under the Agreement to repair and/or service the vehicle.

190.    The defendants' actions are indicative of, and constitute, a lack of good faith and fair dealing, and they violate the covenants of good faith and fair dealing that arose relative to the contracts, transactions, and/or any warranties that defendants entered into and/or issued to plaintiffs.

191.    As a result, plaintiffs have suffered damages.

WHEREFORE, the plaintiffs requests judgment against the defendants for damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

## COUNT FIVE
### (Violations of the New Jersey Service
### Contracts Act, N.J.S.A. 56: 12-87, et seq.)

192.    This Count and cause of action does not apply to Lester Glenn Auto Group. It applies to the other defendants.  The term "defendants" as used in this Count refers to all defendants except for Lester Glenn Auto Group. The term "parties" as used in this Count refers to the plaintiffs and all defendants except for Lester Glenn Auto Group. To the extent that any of the Chrylser entity defendants were not party to the agreement, they are liable as sucessors and/or based upon an assumption of liabilities of one or more of the other Chrysler entity defendants.

193.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

194.    The Agreement between the plaintiffs and the defendants is a Service Contract under the New Jersey Service Contracts Act (the "SCA" or the "Act"). In fact, the documents used by the defendants when selling the Lifetime Warranty Plan to the plaintiffs and to other consumers admits, by

its own terms, that it is a Service Contract Agreement and thus it is subject to the terms of the New Jersey Service Contracts Act.

195.    The defendants were the obligors and/or administrators of the Service Contract, and/or the defendants' agent, for whom the defendants are responsible, were the the obligors and/or administrators of the Service Contract.

196.    The defendants were the sellers and/or issuers of the Service Contract, and/or the defendants' agents, for whom the defendants are responsible, were the the sellers and/or issuers of the Service Contract.

197.    The Plan is in violation of the Service Contracts Act. The Service Contracts Act states that violations of the Act are deemed an "unlawful practice" and shall constitute a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. The NJCFA contains a mandatory treble damages provision and a mandatory attorney's fees provision.

198.    The Service Contract sold by the defendants was in violation of the Service Contracts Act and the defendants' violations of the Act are deemed an "unlawful practice" and shall constitute a violation of the Consumer Fraud Act.

199.    The plaintiffs were damaged and sustained an ascertainable loss as a result of the defendants' violations of the Service Contracts Act and the Consumer Fraud Act, which results in, and entitles the plaintiffs to, a mandatory award of treble damages and attorney's fees from the defendants.

WHEREFORE, the plaintiffs request judgment against the defendants for actual damages and/or treble damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

## COUNT SIX
### (Violations of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56: 12-14, et seq.)

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

200. This Count and cause of action does not apply to Lester Glenn Auto Group. It applies to the other defendants. The term "defendants" as used in this Count refers to all defendants except for Lester Glenn Auto Group. The term "parties" as used in this Count refers to the plaintiffs and all defendants except for Lester Glenn Auto Group. To the extent that any of the Chrylser entity defendants were not party to the agreement, they are liable as sucessors and/or based upon an assumption of liabilities of one or more of the other Chrysler entity defendants.

201. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

202. The Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, et seq., prohibits consumer contracts, warranties, notices, or signs which include a provision that violates a clearly established legal right of a consumer or responsibility of a seller. The Agreement between the plaintiffs and the defendants contains provisions that violate a clearly established right of the plaintiffs and the class members. As a result, the defendants, and the defendants' Agreement, violated the TCCWNA.

203. The TCCWNA states that anyone who violates the Act "shall be liable to the aggrieved consumer for a civil penalty of not less than $100 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and Court costs." The plaintiffs herein and/or class members were damaged and are entitled to statutory and actual damages as well as attorney's fees and Court costs.

WHEREFORE, the plaintiffs request judgment against the defendants for actual damages and/or treble damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,  T: 201-225-9001, F: 201-225-9002

## COUNT SEVEN
### (Intentional Misrepresentation/ Fraudulent Concealament and Non-Disclosure/ Fraud/Fraud in the Inducement/)

204.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

205.    As described herein, the Lifetime Warranty Plan that the defendants (except for Lester Glenn Auto Group) sold to the plaintiffs and to class members contained misrepresentations, omissions, concealments, fraudulent representations, and deceptive statements.

206.    The Lifetime Warranty Plan obligates the defendants to repair and/or service the vehicle, including Lester Glenn Auto Group even though they did not sell the Plan to the plaintiffs. (As noted elsewhere, Lester Glenn Auto Group was obligated by the terms of the Plan to perform the repairs and/or service requested by the plaintiffs.)

207.    The defendants' obligation to repair and/or service the vehicle runs for lifetime of the plaintiffs, which is stated in the Agreement. Pursuant to the Agreement, the defendants must repair and/or service a consumer's vehicle during the Term of the Agreement, which is the consumers' lifetime.

208.    The Lifetime Warranty Plan does not contain a requirement that the consumer get a five year inspection and defendants' denial of claims under the Plan on that basis are improper.

209.    Despite the fact that the Lifetime Warranty Plan does not contain a "five year inspection" requirement, the defendants have undisclosed policies, procedures, and practices that require a five year inspection and they use those policies, procedures, and practices to improperly deny claims under the Plan. The defendants conceal their policies, practices, and procedures, omit those terms from the Agreements, misrepresent the terms of the Agreements, and otherwise make fraudulent

36

representations and deceptive statements to consumers, including the plaintiffs.

210.    The intentional misrepresenations, fraudulent concealment and non-disclosure, and fraud by Lester Glenn Auto Group are described herein and they include, but are not limited to:

(a) improperly denying the plaintiffs' claims for repair and/or service under the Plan and incorrectly and improperly taking the position that the plaintiffs' claims were not covered under the Plan based upon the unsupported position that the plaintiffs failed to have a five year inspection, even though there is no requirement for a five year inspection under the Plan. Such actions constitute a misrepresentation, fraudulent concealment, and/or fraud. The plaintiffs relied on the misrepresentations by Lester Glenn Auto Group and, as a result, had to pay for the repairs and/or service to be done elsewhere.

(b) improperly deciding to deny the plaintiffs' request for repairs and/or service.

(c) improperly going along with, implementing, effectuating, and/or communicating the decision to deny the plaintiffs' request.

(d) Lester Glenn Auto Group is liable even though they did not sell the Lifetime Warranty Plan to the plaintiffs because they were obligated under the terms of the plan to perform the repairs and/or service. Lester Glenn was so obligated because they are one of the dealers in the network of dealers identified in the Plan as being obligated to perform repairs and/or service when consumers like the plaintiffs request repairs and/or service that is covered under the Plan.

(e) Lester Glenn Auto Group is liable even though they did not sell the Lifetime Warranty Plan to the plaintiffs because their actions relating to the denial of the plaintiffs' request for repairs and/or service constitute intentional misrepresenations, fraudulent concealment and non-disclosure, and fraud.

211.    As a result of the defendants' misrepresentations, omissions, concealments, fraudulent representations, and deceptive statements about their policies, procedures, and practices (note that the

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,    T: 201-225-9001, F: 201-225-9002

claims against Lester Glenn are limited to those described herein), the plaintiffs and other consumers do not receive what they paid for under the Agreement, which results in damage and ascertainable loss to them. The plaintiffs' and the other consumers' damages and ascertainable loss include, but are not limited to, the amount paid for the Agreements and/or the amount paid out of pocket for repairs and/or service that should have been covered under the Plan.

212.    Pursuant to the Plans sold to the plaintiffs and others, and based on the money paid for the Plans, the defendants (except for Lester Glenn Auto Group) expressly and/or impliedly represented, and therefore plaintiffs reasonably expected, that the defendants (including Lester Glenn Auto Group) would properly repair and/or service the vehicle under the Plan.

213.    Contrary to the representations made by defendants to plaintiffs and other consumers, the defendants have not repaired and/or serviced the vehicles as they should have, as set forth and discussed herein. Such actions are fraudulent, misrepresentative, deceptive and unconscionable and they caused damage to the plaintiffs and to class members.

214.    Plaintiffs' reliance on the misrepresentations by the defendants (see above for the misrepresentations that apply to Lester Glenn Auto Group and those that do not) was to plaintiffs' substantial detriment and, as a result, plaintiffs have suffered and/or will suffer significant money damages.

215.    By virtue of the foregoing, the defendants have committed intentional misrepresentations and/or fraud and/or fraud in the inducement and/or fraudulent concealment/non-disclosure, which caused harm and damages to the plaintiffs. (See the limitations on the claims against Lester Glenn Auto Group noted above)

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

216.   Defendants knowingly and intentionally made misrepresentations, and fraudulent and false statements of material facts, as described in detail herein.  (See the limitations on the claims against Lester Glenn Auto Group noted above)

217.   The defendants knowingly and intentionally made false statements of material facts to the plaintiffs. The defendants also knowingly and intentionally withheld information that was material and important to the plaintiffs as relates to the marketing and sale of the Agreement (except for Lester Glenn Auto Group) and as relates to the policies, practices, and procedures (this allegation does apply to Lester Glenn Auto Group).

218.   The defendants did so with the understanding and expectation that the plaintiffs would rely on the representations, misrepresentations, and omissions.

219.   Defendant intended for the plaintiffs to rely on their material misrepresentations of fact and on the omissions and withholding of information.

220.   Plaintiffs reasonably and justifiably relied on defendants' material misrepresentations, omissions, and withholding of information, and was unaware of the falsity of defendants' representations, omissions, concealments, and withholding of information, and had a right to rely on them.

221.   The plaintiffs were caused to suffer damages as a result of defendants' acts and omissions.

222.   The plaintiffs entered into agreements with the defendants.  (except for Lester Glenn Auto Group)

223.   The plaintiffs's willingness to assent to the agreements was caused by the material misrepresentations of the defendants. (except for Lester Glenn Auto Group)

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

224. The defendants had knowledge that the misrepresentations were material to the plaintiffs.

225. The defendants intended that plaintiffs would rely on the misrepresentations.

226. The plaintiffs reasonably relied on the defendants' misrepresentations and the defendants' fraud induced plaintiffs to enter the agreement and to pay money to the defendants. (except for Lester Glenn Auto Group)

227. The plaintiffs have been damaged by defendants' actions.

228. The defendants' conduct was fraudulent, malicious, oppressive, egregious, and/or recklessly and was committed with wanton disregard for plaintiffs's rights.

229. The defendants knowingly, intentionally, and fraudulently concealed and/or did not disclose information and/or material facts as described in detail herein. The defendants fraudulently concealed from, and/or intentionally failed to disclose to, the plaintiffs the true information.

230. The defendants had exclusive knowledge of that information and concealed it.

231. The defendants had the capacity to, and did, deceive plaintiffs.

232. The defendants undertook active and ongoing steps to conceal the truth and the defendants knew or should have known that the defendants alone had the information.

233. The facts concealed and/or not disclosed by defendants were material facts in that a reasonable person would have considered them important.

234. The defendants knew that the information that was concealed and not disclosed properly was material and important to the plaintiffs.

235. Plaintiffs were damaged as a result of defendants' concealment, non-disclosure, and fraud.

Gainey McKenna & Egleston, 375 *Abbott Road, Paramus, NJ 07652,*   T: 201-225-9001, F: 201-225-9002

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

## COUNT EIGHT
### (Unjust Enrichment)

236.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

237.    At all relevant times, the defendants have consistently and systematically denied the plaintiffs' claims for repair and/or service under the Plan despite the obligation that they do so.

238.    The Chrylser entity defendants and Chrysler of Paramus have been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been used for the repairs and/or service of the plaintiffs' vehicle.

239.    Lester Glenn Auto Group has been unjustly enriched because they were able to avoid performing the repairs and/or service requested by the plaintiffs and by avoiding them, Lester Glenn was unjustly enriched. Even though Lester Glenn Auto Group did not enter into a contract with the plaintiffs they were obligated to perform the repairs and/or service (as described herein) pursuant to the terms of the Lifetime Warranty Plan.

240.    The defendants have therefore been unjustly enriched  by taking money from the plaintiffs and not providing services and protection under the Plan. (As noted within this Count, Lester Glenn Auto Group did sell the Plan to the plaintiffs but they were unjustly enriched by avoiding the repairs and/or service.)

241.    As a result of the defendants' unjust enrichment, plaintiffs have suffered damages.

242.    The plaintiffs paid the defendants (except for Lester Glenn Auto Group) for the Agreement.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,  T: 201-225-9001, F: 201-225-9002

243.    The defendants (except for Lester Glenn Auto Group) benefitted from those payments they received from the plaintiffs and did not provide what was promised to the plaintiffs.

244.    Ultimately, as a result of the deceptive practices, the defendants (except for Lester Glenn Auto Group) received money from the plaintiffs and were also enriched by keeping the money that should have been paid for the repairs and/or service of the vehicle.

245.    The defendants' improper and unlawful activities, including demanding and taking payments for the Plan that the defendants marketed and sold to the plaintiffs (except for Lester Glenn Auto Group), and which they oversaw, managed and implemented, resulted in the unjust enrichment of the defendants.

246.    All of the defendants were unjustly enriched by their improper actions to the detriment of the plaintiffs, as limited by the terms of this Count as to Lester Glenn Auto Group).

247.    The total damages that the defendants caused the plaintiffs to sustain are at least the amount paid for the Plan (except for Lester Glenn Auto Group) and the amount of the repairs and/or service that should have been paid for by the defendants (including Lester Glenn Auto Group)

248.    The defendants have been unjustly enriched by keeping the money paid by the plaintiffs (except for Lester Glenn Auto Group) and by keeping the money that should have been used for the repairs and/or service of the vehicle.

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

## COUNT NINE
### (Negligence)

249.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

250.    The defendants owed a duty to plaintiffs to act in a reasonable manner.

251.    The defendants breached that duty by the conduct described herein.

252.    Defendants' breach of the duty constituted negligence.

253.    Defendants' breach of the duty and negligence caused damage to the plaintiffs.

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

## COUNT TEN
### (Misappropriation of Funds)

254.    This Count and cause of action does not apply to Lester Glenn Auto Group. It applies to the other defendants.  The term "defendants" as used in this Count refers to all defendants except for Lester Glenn Auto Group. To the extent that any of the Chrylser entity defendants were not party to the agreement and/or did not directly receive money from the plaintiffs, they are liable as sucessors and/or based upon an assumption of liabilities of one or more of the other Chrysler entity defendants.

255.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint, with the same force and effect as though the same was more fully set forth at length in this Count.

256.    The plaintiffs and the defendants entered into the Lifetime Warranty Plan described herein, as did the class members.

257.    The defendants' failure to perform under the Plan, and the defendants' improper taking of money from the plaintiffs (the amount paid for the Agreement and/or the amount of money that should have been used for the repairs and/or service of the vehicle) constitute a misappropriation of the plaintiffs' funds and is actionable.

258.    The plaintiffs were damaged by the misappropriation of funds and are entitled to receive the money from the defendants.

43

WHEREFORE, the plaintiffs request judgment against the defendants for damages, together with interest, punitive damages, attorney's fees, costs and disbursements of this action.

## CLASS ACTION ALLEGATIONS

**Class Definition**

259.    Plaintiffs file this case in their individual capacity and as a class action on behalf of themselves and all other similarly situated New Jersey purchasers as more specifically described herein and/or as the class is defined moving forward.  The plaintiffs, and/or other class members who may be named as class representatives at the time a motion is filed to certify the proposed Class, will represent the class. The proposed class is New Jersey consumers who entered into a Service Contract Agreement entitled "DaimlerChrysler Service Contract" and/or "Lifetime Maximum Care Wrap for Lifetime Warranty Owners Plan Provisions" with the defendants, DaimlerChrysler Service Contracts, Inc. and/or one or  more of the other defendants. The plaintiffs and the class members did not receive what they paid for because the lifetime warranty that they purchased is not being honored but instead is being improperly denied. There may be sub-classes, including consumers who purchased at particular dealers and/or consumers who had to, or who will have to in the future, pay for repairs that should have been covered by the Lifetime Warranty, depending on discovery in the case.

260.    The class allegations herein apply to Lester Glenn Auto Group, however, if discovery reveals that Lester Glenn did not engage in the improper conduct described herein on a wide scale basis, then the plaintiffs' claims against Lester Glenn Auto Group will proceed on an individual basis and the claims against the other defendants can proceed as a class action. Discovery will provide the information needed to determine that issue.

261.    Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for the defendants.

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

262.    Adjudications by individual members of the Class would, as a practical matter, be potentially dispositive of the interests of other members of the Class and substantially impair or impede their ability to protect their interests.  Class-wide adjudication of these claims, therefore, is appropriate.

263.    Class-Wide Injunctive/Declaratory Relief.  Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and/or declaratory relief appropriate with respect to the Class as a whole, rendering class-wide adjudication of these claims appropriate.

**Common Questions of Law or Fact**

264.    There is a well-defined community of interests and there are common questions of law or fact affecting the parties to be represented.  These questions, and other similar factual or legal questions common to the Class, predominate over individual factual or legal questions.  The common questions of law or fact include:

(a)    Whether the defendants breached the warranties and/or the contracts in question, as described herein;

(b) Whether the defendants acted improperly towards the class, including their misrepresentations and other deceptive practices, which are described herein;

(c)    Whether the defendants violated applicable laws and regulations, including the New Jersey Service Contracts Act, the Truth in Consumer Contract, Notice and Warranty Act, and the New Jersey Consumer Fraud Act;

(d)    Whether the defendants knew, recklessly disregarded, or reasonably should have known that their acts and practices violated applicable laws and regulations, including those listed above;

(e)    Whether the defendants' acts and practices were fraudulent and/or negligent;

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,  T: 201-225-9001, F: 201-225-9002

(f)    Whether the defendants engaged in practices intending to, or likely to, deceive reasonable consumers;

(g)    Whether the defendants made false or misleading statements or representations of fact;

(h)    Whether the defendants deliberately misrepresented or failed to disclose material facts to the plaintiffss and the class members;

(i)    Whether the defendants engaged in practices that were false and/or deceptive to consumers, either intentionally or negligently;

(j)    Whether there should be equitable and injunctive relief to protect future customers of the defendants and/or to rescind and/or amend the Agreements in question; and

(k)    Whether the plaintiffs and class members should be awarded treble damages and attorney's fees pursuant to the laws and regulations listed herein.

**Typicality**

265.    The individual plaintiffs, and/or other class representative(s) to be named, are asserting claims that are typical of the claims of the entire class, and the class representative(s) will fairly and adequately represent and protect the interests of the class.  They will have no interests that are antagonistic to those of the other members of the class.

266.    The factual basis of the claims concerning the defendants' misconduct are common to the members of the Class and represent a common thread of fraudulent misconduct and deceptive business practices resulting in ascertainable loss to all class members.  Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other members of the proposed Class.

Gainey McKenna & Egleston, 375 *Abbott Road, Paramus, NJ 07652*,   T: 201-225-9001, F: 201-225-9002

**Fair and Adequate Representation**

267.     The class representative(s) will fairly and adequately represent and protect the interests of the class.  They will have no interests that are antagonistic to those of the other members of the class.  The individual plaintiffs have retained counsel who is competent and experienced in the handling of litigation, including class action litigation and consumer fraud cases.  Counsel will fairly and adequately represent and protect the interests of the class.

**Predominance of Common Question of Law or Fact**

268.     There are common questions of law or fact that predominate over any questions affecting only individual members of the Class.  These common legal or factual questions include those listed herein.

**Superiority of Class Action Treatment**

269.     The individual plaintiffs and the members of the class have all suffered harm and/or damages as a result of defendants' misrepresentations, improper actions, unlawful and wrongful conduct, and deceptive practices.

270.     A class action is superior to all other available methods for the fair and efficient adjudication of those claims.  Individual litigation of the claims of all class members is not economically feasible and is procedurally impracticable.  While the aggregate damages sustained by the Class may be substantial amounts, the individual damages incurred by each class member resulting from defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual class members prosecuting their own separate claims is remote, and, even if every class member could afford individual litigation, the Court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

present the potential for varying, inconsistent, or contradictory judgments. Individualized litigation would magnify the delay and expense to all of the parties and to the Court system because of multiple trials of the same factual and legal issues. There will be no difficulty encountered in the management of this action that would preclude its maintenance as a class action. In addition, defendants has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate. Absent a class action, defendants will likely retain a substantial amount of money, including millions of dollars, received as a result of its wrongdoing and misleading conduct. Their improper actions would go un-remedied and uncorrected. Absent a class action, the class members will not receive restitution. In addition, damage to future customers of the defendants will continue absent equitable and injunctive relief. Class action treatment of these claims is superior to handling the claims in other ways.

271.    Certification of the class will be appropriate under Rule 4:32 of the New Jersey Court Rules.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the forgoing, plaintiffs, on behalf of thenselves and on behalf of all other persons similarly situated, pray for the following relief:

A.    an Order certifying the Class and/or any appropriate sub-classes, appointing the named plaintiffs as Class Representatives, and appointing plaintiffs's counsel as Class Counsel;

B.    an Order awarding compensatory damages to plaintiffs and all members of the Class for all claims in the Complaint;

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652, T: 201-225-9001, F: 201-225-9002

C.      an award of attorney's fees, case expenses, and costs of suit to the plaintiffs and the class including the mandatory attorney's fees under the New Jersey Consumer Fraud Act and/or other laws described herein;

D.      an award of treble damages pursuant to the New Jersey Consumer Fraud Act in connection with defendants' improper actions;

E.      an Order providing for equitable and injunctive relief, including a rescission and/or amendment of existing Agreements in the hands of class members, refund to customers, and/or other relief;

F.      Declaring that the defendants have breached the applicable warranties and/or contracts governing its conduct toward the plaintiffs and that such breaches have harmed, and continue to harm, plaintiffs;

G.      an Order requiring disgorgement of defendants' ill-gotten gains, to pay restitution to plaintiffs and all members of the Class, and to restore to the public all funds acquired by means of any acts or practices declared by this Court to be unlawful, fraudulent or unfair business acts or practices, a violation of laws, statutes, or regulations, or constituting unfair competition or false, untrue or misleading representations;

H.      judgment against defendants for actual and punitive damages for each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs; and

I.      such other and further relief as the Court may deem necessary or appropriate.

## **JURY DEMAND**

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, NJ 07652,   T: 201-225-9001, F: 201-225-9002

**PLEASE TAKE NOTICE** that the Plaintiffs demands a trial by jury.

Dated:  May 7, 2021

By:_____

BARRY J. GAINEY (7560)
*Attorney for Plaintiffs*

Gainey McKenna & Egleston, 375 *Abbott Road, Paranus, NJ 07652,   T: 201-225-9001, F: 201-225-9002*

**CITIZENS** Automobile Finance, Inc.

DEAL# 76445

Rev. 10/04

**RETAIL INSTALLMENT CONTRACT**

NJ

Dealer Number _____

Date _____

Buyer: **THELMA M PANNELL 19 MONROE PL APT B MONTCLAIR NJ 07042-4618**
(Print Full Name and Address of Principal Residence)

Co-Buyer: **FONTAINE DANTZLER 19 MONROE PL APT B MONTCLAIR NJ 07042-4618**
(Print Full Name and Address of Principal Residence)

Creditor-Seller: **CHRYSLER PLYMOUTH OF PARAMUS I    234 RT 4 EAST    PARAMUS, NJ 07652**
(Print Full Name and Address)

**WHO IS BOUND:** You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you agree to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable for any amount due. In this Contract, "we", "us", and "our" mean the creditor named above and, after assignment, the creditor's assignee ("Assignee").

**DESCRIPTION OF VEHICLE:** You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year Model | Make and Model | Body Type | Vehicle Identification Number | Key Number |
|---|---|---|---|---|---|
| NEW | 2007 | CHRYSLER    300 | Sedan | 2C3LA43R27H877062 | |

If truck or recreational vehicle – Describe body, gross vehicle weight and major items of equipment sold:

The vehicle is being purchased primarily for ☐ personal, family or household, or ☐ business purposes.

**NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES:** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**AVISO A LOS COMPRADORES DE AUTOS DE USO O DE DEMOSTRACIÓN:** LA INFORMACION QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHICULO ES PARTE DE ESTE CONTRATO. LA INFORMACION EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACION CONTARIA EN EL CONTRATO DE VENTA.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE The total cost of your purchase on credit, including your downpayment of $ 2500.00 |
|---|---|---|---|---|
| 9.79 % | $ 10709.50 | $ 32826.74 | $ 43536.24 | $ 46036.24 |

**PAYMENT SCHEDULE:** Your payment schedule will be **72** monthly payments of $ **604.67** each, due on the same day of each month starting on **10/14/2007**.

**PREPAYMENT:** You have the right to pay off this Contract early. If you do so, you will not have to pay a penalty.

**SECURITY:** You are giving us a security interest in the motor vehicle being purchased.

**LATE FEE:** If all or any portion of a payment is more than ten days late, you will be charged a default charge of $10.

**OTHER TERMS:** Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

**ITEMIZATION OF THE AMOUNT FINANCED**

1. Cash Price (including any accessories, services and sales tax of $ **2274.85**) — $ **33915.54** (1)
2. Downpayment:
   - A. Trade-in. Your Trade-in is a _____ _____ _____
     (Year)    (Make)    (Model)

     Gross Allowance $ **N/A** Less Amount Owing $ **N/A** Equals Net Trade-in $ **0.00**
     (If Amount Owing exceeds Gross Allowance, enter "0" as Net Trade-in and enter excess as Prior Credit or Lease Balance in Item 4C)
   - B. Cash Downpayment — $ **N/A**
   - C. Manufacturer's Rebate Applied to Downpayment — $ **2500.00**
   - D. Total Downpayment (A plus B plus C) — $ **2500.00** (2)
3. Unpaid Balance of Cash Price (1 minus 2D): — $ **31415.54** (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf:
   - A. Amounts Paid to Insurance Companies*:
     1. Optional Credit Life Insurance — $ **N/A**
     2. Optional Credit Accident and Health Insurance — $ **N/A**
   - B. Amounts Paid to Public Officials:
     1. Government License and/or Registration Fees — $ **361.70**
     2. Certificate of Title Fees — $ **N/A**
     3. Lien Recording Fees — $ **N/A**
     4. UCC Filing Fees — $ **N/A**
   - C. Other Charges (Describe who will receive payment and purpose)

| | To | | For | | |
|---|---|---|---|---|---|
| 1. | N/A | For | Prior Credit or Lease Balance | $ | N/A |
| 2. | N/A | For | N/A | $ | N/A |
| 3. | CHRYSLER PLYMOUTH O For | For | GAP INSURANCE | * $ | 750.00 |
| 4. | CHRYSLER PLYMOUTH O For | For | DOC FEE | * $ | 299.50 |

| | | | |
|---|---|---|---|
| 1. Government License and/or Registration Fees | | $ | 361.70 |
| 2. Certificate of Title Fees | | $ | N/A |
| 3. Lien Recording Fees | | $ | N/A |
| 4. UCC Filing Fees | | $ | N/A |

C. Other Charges (Describe who will receive payment and purpose)

| | | | | |
|---|---|---|---|---|
| 1. To N/A | For Prior Credit or Lease Balance | $ | N/A | |
| 2. To N/A | For N/A | * | $ | N/A |
| 3. To CHRYSLER PLYMOUTH OF For GAP INSURANCE | * | $ | 750.00 | |
| 4. To CHRYSLER PLYMOUTH OF For DOC FEE | * | $ | 299.50 | |

D. Total Other Charges and Amounts Paid to Others on Your Behalf (A plus B plus C)  $  1411.20 (4)

5. Amount Financed / Unpaid Balance (3 plus 4D):  $  32826.70 (5)

*We may be retaining or receiving a portion of these amounts

**PROMISE TO PAY:** You promise to pay us the Amount Financed shown above, in accordance with the payment schedule show in Lending Disclosures Box shown above, plus a Finance Charge determined by applying each day a daily rate of 1/365th of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed. You also agree

**PAYMENTS BEFORE OR AFTER DUE DATE: This is a simple interest Contract. This means that the amou** shown above may vary depending upon when your payments are received. The earlier you make payments before less Finance Charge you will owe. The later you make payments after they are due, the greater the Finance Charge. We credit ea in any manner we choose, unless applicable law requires a particular method of payment allocation. We will send you a check for any a owed you (if it is $1.00 or more) after you make your last payment; we will advise you of any additional amount owed (if it is $1.00 or more). There is a possibility that a supplemental payment of interest might be due if earlier payments were received after their due date.

**LOCATION OF VEHICLE:** The vehicle will be kept at the above address of the Buyer, unless another address is listed below:

SAME

(Street and Town)

**INSURANCE ON THE VEHICLE:** Insurance coverage to protect Assignee for loss or damage to the vehicle (collision, fire and theft) is required. You have the option of furnishing the required insurance either through your existing policies or you may purchase equivalent insurance coverage through anyone you wish acceptable to the Seller. If you do not obtain the required insurance, and we are unable to purchase insurance covering both your interest and our interest, we may purchase coverage covering only our interest in the vehicle. If we purchase insurance covering only our interest in the vehicle, the insurance will not protect your interest in the vehicle. The charge for this coverage is not refundable upon prepayment unless such a refund is required by law.

**CREDIT INSURANCE: YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.** The policies or certificates issued by the insurer will describe the terms and conditions in further detail. If you want the following insurance, sign below.

☐ Life   (☐ Buyer   ☐ Co-Buyer   ☐ Both) at a premium of $   N/A for a term of
Credit life insurance will pay your debt on this Contract up to $   N/A   .
☐ Disability, Accident and Health (Buyer Only) at a premium of $   N/A   for a term of
Credit disability, accident and health insurance will pay your debt on this Contract up to $
The name of the insurer is   Name   of   Home Office Address

Buyer Signature                    Date         Co-Buyer Signature                    Date

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**IMPORTANT: THE TERMS OF THIS CONTRACT ARE CONTAINED ON BOTH SIDES OF THIS PAGE. READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.**

**DUE TO THE PASSAGE OF THE "USA PATRIOT ACT" WE ARE REQUIRED TO NOTIFY OUR CUSTOMERS OF THE FOLLOWING:** VERIFICATION OF CUSTOMER IDENTITY - Federal laws and regulations require us to request information from you prior to opening an account or adding an additional signatory to an account. The information we request may vary depending on the circumstances, but at a minimum, will include your name, address, an identification number such as your social security or taxpayer identification number, and for individuals, your date of birth. We are also required to verify the information you provide to us. This verification process may require you to provide us with supporting documentation that we deem appropriate. We may also seek to verify the information by other means. We reserve the right to request additional information and/or signatures from you from time to time. In all cases, the protection of our customer's identity and confidentiality is our pledge to you.

*The Annual Percentage Rate may be negotiable with the Creditor-Seller. The Creditor-Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

**NOTICE TO RETAIL BUYER**
Do not sign this contract before you read it or if it contains any blank spaces.
You are entitled to a copy of the contract at the time you sign.
Keep it to protect your legal rights.
By signing below, you acknowledge that you have received a completely filled-in copy of this contract signed by the Seller on the date of this Contract and a copy of the Citizens Financial Group, Inc. Privacy Notice.

**RETAIL INSTALLMENT CONTRACT**

Buyer Signs _____                    Co-Buyer Signs _____

Creditor-Seller Signs _____   CHRYSLER PLYMOUTH OF PARAMUS I

By signing here, the Creditor-Seller accepts this Contract and also agrees to the terms of the Seller's Assignment on the reverse side.

## OTHER IMPORTANT AGREEMENTS:

**OWNERSHIP AND RISK OF LOSS:** You agree to pay us all you owe under this Contract even if the vehicle is unintentionally damaged, destroyed or missing. You agree not to sell, transfer, or remove the vehicle from the United States for more than 30 days without our written permission. You agree to maintain the vehicle in good condition and repair, except wear and tear caused by ordinary use. We may inspect the vehicle at any reasonable time. You will not expose the vehicle to misuse or confiscation or permit anyone to use the vehicle for any unlawful purpose. You will keep the vehicle free of any claims and seizures by any government authority. You will not rent the vehicle to others or carry passengers for hire. If we pay any repair bills, storage bills, taxes, fines, or other charges on the vehicle, you will repay the amount when we ask for it. You will immediately notify us of any change in the address of your principal residence or the address where the vehicle is regularly located.

**SECURITY INTEREST:** You are giving us a security interest in the vehicle being purchased; all proceeds of the vehicle; all accessories; and any attachments, accessories, or equipment affixed to the vehicle within ten days of this Contract. The security interest also covers: (1) insurance premiums returned to us; (2) proceeds of insurance policies on the vehicle; and (3) proceeds of any insurance policies on your life or health financed in this Contract. This security interest secures payment of all amounts you owe in this Contract and in any transfer, renewal, extension, modification, refinancing, or assignment of this Contract. It also secures your other agreements in this Contract. For purposes of this Contract, we agree to forego any security interest you may have given under another agreement which secures your obligation under this Contract. You will cause or cooperate in causing our security interest (lien) on the vehicle to be shown on the title. You will not allow any subordinate or other liens to be placed on the vehicle.

**REQUIRED PHYSICAL DAMAGE INSURANCE:** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this Contract. You may buy this coverage from any insurer acceptable to us. You will make us loss payee and provide evidence of insurance. At any time during the term of this Contract, if you do not have physical damage insurance which covers both your and our interests in the vehicle, then we may buy it for you. If we do not buy physical damage insurance which covers both interests in the vehicle, we may, if we decide, buy insurance which covers only our interest, as permitted by applicable law.

We are under no obligation to buy any insurance, but may do so if we desire. If we buy either of these coverages, we will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a Finance Charge at the Annual Percentage Rate applicable to this Contract, but not to exceed the highest rate permitted by law. You agree to pay the charge, at your option, in full within 10 days from the date we mail or tender to you a notice that we have paid for such insurance, or in equal installments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that we can use any insurance settlement either to repair the vehicle or to apply to your debt.

**INSURANCE CHARGES RETURNED TO US:** If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance covering only our interest in the vehicle. Any refund on optional insurance we obtain will be credited to your account or returned to you. Any insurance charges returned to us and credited to your account will be applied to as many of your installments as they will cover, beginning with the final installment.

**DEFAULT:** You are in default if: (1) you fail to make a regularly scheduled installment payment within 10 days of its due date; (2) any event occurs which substantially impairs the value of the vehicle; or (3) you breach any of your agreements or obligations under this Contract or if you die.

**REQUIRED REPAYMENT IN FULL BEFORE THE SCHEDULED DATE:** If you are in default, we can upon written notice to you and subject to any right you may have to cure the default, demand that you pay all you owe on this Contract at once. If you fail to pay, you will be liable for interest at the Annual Percentage Rate applicable to this Contract, but not to exceed the highest rate permitted by law. Notwithstanding anything else in this paragraph, the maturity of any amount owing on this Contract will not be accelerated where, following your default consisting solely of your failure to make timely installment payments and the subsequent repossession of the motor vehicle, you make timely tender of all amounts due under this Contract at the time of such tender other than amounts that would be due if this Contract were accelerated.

**RIGHT TO SET OFF:** To the extent permitted by law, if you are in default, we can, subject to your right to cure the default, pay all or part of the amounts owed under this Contract from any deposits or funds you have with us without telling you ahead of time.

**REPOSSESSION OF THE VEHICLE:** Repossession means our taking the vehicle from you. If you are in default, we can repossess the vehicle upon written notice to you and subject to your rights to cure the default. To take the vehicle we can enter your property, or the property where it is stored, so long as it is done peacefully. If there is any personal property in the vehicle, such as clothing, we can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle.

**GETTING THE VEHICLE BACK AFTER REPOSSESSION:** If we repossess the vehicle, state law may permit you to get it back (redeem) by curing any payment or other default(s) within the time allowed in the cure notice. If state law does not permit you to cure your default(s) in this manner, you may redeem the vehicle by paying the entire amount you owe on this Contract (not just past due payments) plus, to the extent permitted by law, the cost of taking and storing the vehicle, and other expenses that we have had. Your right to redeem the vehicle will end when the vehicle is sold.

**SALE OF THE REPOSSESSED VEHICLE:** We will send you a written notice of sale within the time period required by law before selling the vehicle. If you do not redeem the vehicle by the date on the notice, we can sell it. We will use the net proceeds of the sale to pay all or part of your debt. The net proceeds of sale will be figured this way: To the extent permitted by law, any charges for taking, storing, cleaning, advertising and selling the vehicle, any attorney's reasonable fees, any court costs and any other charges permitted by law will be subtracted from the selling price. If you owe us less than the net proceeds of sale, we owe you the difference, unless someone else has an interest in the vehicle. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle. If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged interest at the highest lawful rate, not to exceed the Annual Percentage Rate applicable to this Contract, until you do pay all you owe to us.

**COLLECTION COSTS:** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorneys' reasonable fees not to exceed 20% of the first $500 and 10% of the balance remaining on this Contract, and court costs to the extent permitted by law.

**LATE CHARGE:** If all or any portion of a payment is more than ten days late, you will be charged a default charge of $10.

**DISHONORED CHECKS:** A dishonored check fee of $20 may be assessed for any check returned to us for insufficient funds.

**DELAY IN ENFORCING RIGHTS AND CHANGES OF THIS CONTRACT:** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we can extend the time for making some payments without extending others. Any change in terms of this Contract must be in writing and signed by us. No oral changes are binding. If any provision of this Contract conflicts with applicable law, it will be considered modified to comply with that law and the remaining provisions shall continue.

**WARRANTIES SELLER DISCLAIMS: You understand that the Seller is not offering any express warranties unless the Seller extends a written warranty.** This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**CREDIT INFORMATION:** You agree that we or our affiliate providing servicing or to whom this contract may be assigned may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, modification or extension of this Contract. If you ask, you will be told the name and address of any credit bureau from which we or our affiliate obtained your credit report. We may also verify employment, pay, assets and debts. Anyone receiving a copy of this is authorized to provide us with such information. You agree that, to the extent permitted by law and as disclosed in our privacy notice, we, our assignee, any of our affiliates, and others may exchange credit, account and financial information about you.

**NEGATIVE INFORMATION:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**GOVERNING LAW:** This Contract is governed by the law of the State of New Jersey, and is the entire agreement between you and us.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## Guaranty

FOR VALUE RECEIVED, undersigned, jointly and severally if more than one, unconditionally guarantee payment and performance of all obligations of Buyer and Co-Buyer under the above Retail Installment Contract ("the Contract"), accept all provisions of the Contract and agree to pay all reasonable collection expenses and attorneys' reasonable fees incurred in enforcing this guaranty. Undersigned hereby waive demand for payment, notice of nonpayment and notice of acceptance of this guaranty and consent to extensions of time of payment

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## Guaranty

FOR VALUE RECEIVED, undersigned, jointly and severally if more than one, unconditionally guarantee payment and performance of all obligations of Buyer and Co-Buyer under the above Retail Installment Contract ("the Contract"), accept all provisions of the Contract and agree to pay all reasonable collection expenses and attorneys' reasonable fees incurred in enforcing this guaranty. Undersigned hereby waive demand for payment, notice of nonpayment and notice of acceptance of this guaranty and consent to extensions of time of payment and other indulgences, including, without limitation, release of any guarantor of the Contract on release of the vehicle which is collateral for performance of the obligations of Buyer and Co-Buyer, which may be granted to Buyer and Co-Buyer or any guarantor of the Contract without notice to undersigned and whether or not (and before or after) repossession has been made or undertaken and whether or not suit has been brought against Buyer or Co-Buyer or any guarantor of the Contract. Undersigned shall be primarily and jointly and severally liable with Buyer and Co-Buyer for full performance of Buyer's and Co-Buyer's obligations under the Contract.

SIGNATURES (Sign Full Name in Ink):                                                     Date: _____

_____ (Seal)   _____
Guarantor                                   Address

_____ (Seal)   _____
Guarantor                                   Address

## SELLER'S ASSIGNMENT

...assigns to the Assignee named below all of its right, title and interest in this Retail Installment Contract ("Contract"). ... presents, warrants and covenants to Assignee that: (a)(i) no statements made or furnished to Assignee by Buyer or any Co-... (collectively "Buyer"), Seller or any other person are untrue or incomplete; (ii) Buyer has not financed the down payment of the Vehicle described in the Contract ("the Vehicle"); (iii) Buyer is a bona fide applicant having legal capacity to enter into the Contract; (iv) the signature of the Buyer on all documents is genuine, and (v) the amount stated in the Contract to be due will in fact be due and payable at the time or times provided therein free of any claims, defenses, setoffs or counterclaims; (b) Seller has verified Buyer's identification; (c) The down payment for the Vehicle is paid in full with negotiable funds; (d) Seller has sold the Vehicle and the proceeds of the Contract are to be used to pay for such Vehicle and related items; (e) Seller had indefeasible title to the Vehicle immediately prior to the purchase by Buyer, and the right and authority to sell the Vehicle to Buyer, free and clear of all liens and encumbrances; (f) Seller warrants that the Vehicle is not a grey market or altered vehicle and is not salvaged, rebuilt or reconstructed from a total loss or otherwise materially impaired and the title to the Vehicle does not reflect such and the odometer statement executed by the Seller in connection with the Vehicle does not indicate true mileage unknown; (g) Seller has the authority to assign the Contract to Assignee free and clear of all liens and encumbrances; (h) Seller will secure and perfect for Assignee a security interest in the Vehicle free and clear of all liens or encumbrances, and deliver to Assignee evidence satisfactory to Assignee of such security interest within six months of the date of the Contract; (i) The description of the Vehicle is true and complete in the Contract and the Vehicle will be or has been duly delivered to and accepted without revocation by Buyer; (j) Insurance or other coverage provided or arranged by Seller does not violate any applicable law or regulation and insurance documentation and rebates of unearned premiums, if any, will be delivered to Buyer within the time required by law; (k) The Vehicle is insured by a company acceptable to Assignee against fire, theft and collision, Assignee is loss payee and written evidence of such insurance has been or will promptly be provided to Assignee; (l) All optional credit insurance sold by Seller to Buyer is for the full term of the Contract and is limited to coverage of Buyer; (m) Seller has provided Buyer with a completed Contract and any other document as required by applicable law, and the information filled in thereon by Seller is accurate; (n) Seller is licensed to the extent required by law; (o) Seller has complied with all applicable transaction reporting requirements including, without limitation, the requirement under Section 6050I of the Internal Revenue Code as may be amended from time to time to report cash receipts of more than $10,000, and its implementing regulations; (p) Seller has complied with Assignee's procedures regarding the Fair Credit Reporting Act (FCRA) and Equal Credit Opportunity Act (ECOA) including, but not limited to, the following: (i) Seller has only submitted to Assignee credit information on Buyer after Buyer's signatures were first obtained on a credit application acceptable to Assignee ("Application"); (ii) Seller has not submitted any credit information on any individual whose signature does not appear on the application; (iii) Seller has advised Buyer that his/her Application has been submitted to Assignee at Assignee's current address; and (iv) Seller has advised Buyer that credit was approved by Assignee; (q) Seller has complied with all requirements of the FCRA and ECOA and all other federal, state and local laws, rules and regulations applicable to the extension of credit and consumer protection or otherwise applicable to the sale of the Vehicle including, without limitation, the requirements to provide Buyer with a foreign translation of the Contract; (r) Seller will promptly forward to the proper authorities all federal, state and local fees and taxes due in connection with the sale of the Vehicle; (s) Seller does not charge Buyer for filing fees or other costs paid by Seller to public officials to perfect Assignee's security interest in the Vehicle, except where allowed by law, nor does Seller make any type of charge, including documentary or processing charges, which Seller does not make in any other cash transaction; (t) Assignee shall have the right, but not the obligation, to inspect Seller's books, financial documents and other business records relating to this assignment or this Contract at Seller's place of business during Seller's normal business hours; and (u) upon request by Assignee, Seller shall promptly submit to Assignee signed financial statements of Seller's business, to include balance sheets, cash flow statements, profit and loss statements and such other information required by Assignee.

Each of these warranties, representations and covenants is material to Assignee's acceptance of this Contract. If any of them is breached or is erroneous, Seller unconditionally promises to accept reassignment of this Contract, without recourse against Assignee and to pay Assignee, upon demand (1) the unpaid balance of the Contract as determined by Assignee, (2) all losses and expenses incurred by Assignee as a result of such breach or untruth, and (3) out-of-pocket expenses paid or incurred by Assignee in connection with the collection of any amount due under the Contract, including attorneys' fees and costs of litigation, whether by or against Assignee, and expenses with respect to repossessing, storing, repairing and selling the Vehicle. In addition, Seller agrees to indemnify Assignee in the manner and to the extent specified in the preceding sentence if the Assignee suffers a loss or expense in any judicial or administrative proceeding because of any claim or defense asserted against Assignee as a result of any act or omission on the part of Seller. If this Contract is rescinded by court order, Seller shall pay Assignee the amount specified above.

Seller shall be liable even if a waiver, compromise, settlement or variation of the terms of the Contract releases the Buyer.

The provisions of this assignment shall be binding on the heirs, representatives, successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. Seller waives notice of acceptance of this guarantee and assignment and notices of non-payment and non-performance.

This assignment is without recourse against Seller except as provided above and/or in another agreement, if any, between Seller and Assignee relating to the financing of retail installment contracts.

Assigned to:   Citizens Automobile Finance, Inc. ("Assignee") (unless another assignee is named below.)

CC216395 (8/00)

04/29/2020  10:01     7324589766              KRAUSZES                                    PAGE  01

*800-992-1997*

CHRYSLER

*Service Contracts*
DaimlerChrysler

T PANNELL
19 MONROE PL APT B
MONTCLAIR        NJ 07042-4618

DEAR T. PANNELL                    VIN: 2C3LA43R27H877062

CONGRATULATIONS! You are now covered by a genuine DAIMLERCHRYSLER SERVICE CONTRACT.  You made a wise choice when you elected to protect your vehicle investment.

The enclosed Plan Provisions are your actual Service Contract. They fully describe the coverage and features of your Plan and identify you and your vehicle as being eligible for Plan service.

The personalized Plan Provisions should always be presented to your servicing dealer when requesting Plan service. We recommend that you keep your Plan Provisions with your vehicle's other important papers in the glove box at all times for prompt service.

If you have any questions regarding the specific service contract you purchased, contact your selling dealer.

Should you have questions about your service contract coverage or benefits that your dealer cannot answer, or need assistance obtaining Plan Service from a DaimlerChrysler Motors LLC dealer, please feel free to call us toll-free, 8:00 A.M. to 5:00 P.M. Monday through Friday.

1-800-521-9922 In USA
1-800-465-2001 In Canada
1-800-457-4330 Hearing Impaired

We sincerely hope you never need a covered component repair—but, if you do—you have the security of a DaimlerChrysler Service Contract.

Ann Tomlanovich
President, DaimlerChrysler Service Contracts, Inc.

DaimlerChrysler Service Contracts, Inc.
P.O. Box 2700
Troy, Michigan
48007-2700

CHRYSLER


*Service Contracts*
DaimlerChrysler

# LIFETIME MAXIMUM CARE WRAP
# FOR LIFETIME WARRANTY OWNERS
# PLAN PROVISIONS

001984-0

**ISSUED TO:**    SERVICE CONTRACT # 32537786    120/ LPM100N
07L4MIC

T. PANNELL
19 MONROE PL APT B    071024
MONTCLAIR    NJ 07042-4618    VEHICLE IDENTIFICATION NUMBER:
2C3LA43R27H877062

SELLING DEALER:    32 68277    EFFECTIVE:    09/15/07

DEFINITIONS: The following are key words which are included in these Provisions which have particular meaning:

"you, your - Means "you" the Plan purchaser

"Dealer - Means "Authorized DaimlerChrysler Service Contract Dealer"

"DaimlerChrysler Vehicles – Means "Chrysler, Dodge or Jeep brand vehicles only"

"we, us, our - Means "DaimlerChrysler Service Contracts Inc. . PO Box 2700, Troy, MI 48007-2700, Telephone number: 1-800-521-9922

"Plan - Means this "Lifetime Maximum Care Wrap Plan" which is a Service Contract

**A SERVICE CONTRACT:** This Plan is a service contract between you and us. It protects you against major repair bills should a component covered by the Plan fail in normal use. This Plan is not part of the vehicle's factory warranty. We are solely responsible (liable) for fulfillment of the provisions of the Plan.

IMPORTANT! The maximum reimbursable amount should a covered component fail will be THE TOTAL COST OF THE REPAIRS, PER VISIT, LESS THE DEDUCTIBLE, OR THE CASH VALUE OF THE VEHICLE WHICHEVER IS LESS! The cash value of the vehicle will be determined by the average retail value as listed in the current NADA Used Car Pricing Guide. In situations where the repairs costs exceed the cash value of the vehicle, the remainder of the Plan coverage will be cancelled.

**PLAN PROVISIONS:** These are your plan provisions. Place them in your glove compartment. You must present these provisions to the servicing dealer when requesting plan service. They will describe the plan you purchased and identify you and your vehicle as being eligible for plan service by a specifically assigned service contract number.

This issuance of Plan Provisions by us shall not be deemed as a waiver of our right, or considered a restriction of our right to refuse to pay for service and/or to cancel the Plan should it subsequently be discovered that the vehicle for which the Plan was purchased was not eligible for Plan coverage.

NOTE: In addition to your service contract, your vehicle may also be covered by your vehicle's Lifetime Powertrain warranty. For warranty coverage details, please refer to your warranty information booklet. THIS PLAN DOES NOT COVER ANY REPAIR WHICH IS COVERED BY THE LIFETIME POWERTRAIN WARRANTY.

**OBTAINING PLAN SERVICE:** Plan service will be provided or assisted by the Dealer who sold you the Plan, at his place of business, *using new or authorized remanufactured parts.* In the event you cannot return to the selling Dealer for service, you may request service from any Chrysler, Dodge or Jeep Dealer within the 50 States, the District of Columbia, Canada, Guam, Puerto Rico or Mexico.

IMPORTANT! PLAN SERVICE OBTAINED FROM OTHER THAN A CHRYSLER, DODGE OR JEEP DEALER IS NOT REIMBURSABLE UNLESS AUTHORIZED BY DAIMLERCHRYSLER SERVICE CONTRACTS BEFORE THE SERVICE IS PERFORMED. DEALERS CANNOT AUTHORIZE REPAIRS.

**ELIGIBLE VEHICLES:** Only domestic 2006 to current model year DaimlerChrysler vehicles (excludes Viper, all SRT vehicles, Sprinter, diesel equipped vehicles and all Ram Cab/Chassis vehicles) covered by a minimum of BOTH a 3/36 Basic Warranty AND Lifetime Powertrain Warranty are eligible within 48 months of the in-service date and 48,000 miles.

IMPORTANT! The following vehicles are not eligible for a DaimlerChrysler Service Contract: Vehicles equipped with right hand drive; Motor Homes; Vehicles placed in taxi or limousine service (except vehicles placed in van pool service); vehicle used for emergency service, ambulance, towing or police service; vehicles used for postal, dump truck or severe off-road use; vehicles converted from two to four-wheel drive; vehicles altered or converted from the original manufacturer's specifications; vehicles not used in accordance with manufacturer's specifications for payload and/or towing capacity; vehicles equipped with a diesel engine; vehicles that operate on other than Gasoline Fuel Systems (i.e. diesel, natural gas, electric, hybrid gas / electric vehicles); vehicles with a gross weight (G.V.W.) of over 14,000 pounds; vehicles where the factory warranty has been voided, reduced or restricted by the manufacturer; vehicles that have been declared to be a total loss by any insurance company, is rebuilt after being declared a total loss, or is issued a title indicating that it is designated as 'salvage', 'junk', 'rebuilt' or words of similar impact.

**WHEN PLAN COVERAGE STARTS AND ENDS:** Trip Interruption starts on the date you purchase the Plan. Car Rental starts on the date you purchase the Plan, and covers those repair instances when a replacement vehicle is not otherwise provided. ROADSIDE ASSISTANCE TOWING AND REPAIR COVERAGE START WHEN THE VEHICLE'S FACTORY WARRANTY EXPIRES.

This plan offers mechanical coverage as specified to the named original purchaser or retail lessee of the vehicle only, for the lifetime of that original purchaser or retail lessee. The plan ends upon the death of that original purchaser or retail lessee or upon the transfer or sale of the vehicle. The plan ends even if the transfer occurs by operation of law, such as to a lienholder, family member through succession, or successor business.

**TRIP INTERRUPTION, FIRST DAY RENTAL/CAR RENTAL ALLOWANCE, TOWING, AND ROADSIDE ASSISTANCE EXPIRE AT 7 YEARS OR 100,000 MILES ON THE ODOMETER.**

04/29/2020  10:01    7324589766    KRAUSZES    PAGE  03

**$100 DEDUCTIBLE:** You are responsible to pay only the first $100 of the total cost of covered component repairs performed during each repair visit. Repairs not covered by the Plan are your responsibility. You may be required to pay state and local taxes in addition to the deductible.

**TRIP INTERRUPTION:** The Plan will pay up to $1,000 for lodging, meals, and emergency transportation such as taxi, bus, or airline for you and your family if (1) your vehicle is inoperable due to a failure covered under this Plan or under the factory warranty, and (2) you are more than 100 miles from the address of record. Lodging, meals and car rental receipts must accompany a copy of repair bill and must be mailed to DaimlerChrysler Service Contracts, P.O. Box 2700, Troy, Michigan 48007-2700.

**FIRST DAY RENTAL/CAR RENTAL ALLOWANCE:** Coverage starts on the date you purchase the Plan and is not subject to a deductible. First Day Rental Allowance provides $35 car rental allowance if the vehicle is to be serviced for any same day mechanical or maintenance service.

Car Rental Allowance will pay up to $35 per day for a rental any time repairs take overnight, and a component covered by the Plan or the manufacturer's Warranty fails.

**Total Rental Allowance per occurrence is a maximum of 5 days or $175.**

The Plan will not pay for rental charges for a vehicle that is awaiting service or parts unless the vehicle is inoperable due to a mechanical failure of a covered component, or unless continued operation would cause further damage.

The rental car must be obtained from a Dealer. If a Dealer does not have rental cars available, you may obtain one from a licensed rental agency. Rental coverage is subject to state and local laws and policies imposed by the rental agency. Rental charges in excess of the amount allowed by the Plan are your responsibility. The Plan is not responsible for any refusal of a rental agency to rent a vehicle to you.

**ROADSIDE ASSISTANCE***

**NOTE: YOU MUST CALL 1-800-521-2779 FOR THIS SERVICE.**

The plan provides assistance due to a disablement caused by any mechanical failure and in addition, the Plan provides coverage for such items as towing to the nearest Chrysler, Dodge or Jeep Dealer or DaimlerChrysler authorized repair facility, flat tire change (with your good spare), battery jump, out of gas delivery (maximum 2 gallons), lockout service i.e. keys locked in car or frozen lock, to a maximum of $100, per occurrence. Any expense beyond $100 is your responsibility at the time and site of service. Towing assistance will be dispatched only for mechanical disablements which renders the vehicle inoperative. (See exclusions under "THE PLAN WILL NOT COVER.")

This service is provided to you as part of your service contract to minimize any unforeseen vehicle operation inconvenience and is available 24 hours per day, 365 days per year.

**HOW TO USE DAIMLERCHRYSLER ROADSIDE ASSISTANCE***: All required towing, roadside assistance, lockout, and other roadside assistance services described previously **MUST BE ARRANGED AT TIME OF OCCURRENCE** through DaimlerChrysler Roadside Assistance by calling **1-800-521-2779.** You should be prepared to provide the DaimlerChrysler representative with your name, service contract number, vehicle license plate number, and location including the phone number you are calling from and a brief description of the problem.

In some cases, DaimlerChrysler Roadside Assistance may authorize you or your Chrysler, Dodge or Jeep Dealer to arrange for local service and will provide an authorization number to do so. Your service contract will in these instances provide reimbursement of up to $100 maximum per Roadside Assistance incident, provided that the claim contains: (A) A valid original receipt of payment from the tow/repair facility for the services rendered (Claims which contain other than original receipts may be denied.); (B) The DaimlerChrysler Roadside Assistance authorization number; and (C) Your valid DaimlerChrysler Service Contract number. All Roadside Assistance claims that meet requirements should be sent to.

DaimlerChrysler Roadside Assistance
P.O. Box 9145
Medford, MA 02155
Attn: Claims Department
1-800-521-2779
FAX Number: 1-781-658-2691

DAIMLERCHRYSLER ROADSIDE ASSISTANCE WILL NOT COVER SERVICES WHICH ARE SOLICITED WITHOUT FIRST CONTACTING DAIMLERCHRYSLER ROADSIDE ASSISTANCE FOR PRIOR AUTHORIZATION.

* All Roadside Assistance is provided through Cross Country Motor Club, Inc., Medford, MA 02155, except in Alaska, California, Hawaii, Oregon, Wisconsin and Wyoming where services are provided through Cross Country Motor Club of California, Inc., Thousand Oaks, CA 91360. Both collectively sometimes referred to as CCMC. CCMC acts merely as a dispatcher of referral service to persons or entities who provide the actual service. These persons and/or entities are independent contractors. Accordingly, neither DaimlerChrysler nor CCMC assumes responsibility for the acts, errors, omissions, negligence, misconduct of such persons and/or entities. All persons availing themselves of the benefits of DaimlerChrysler Roadside Assistance are to look solely to such persons and/or entities for liability arising in connection therewith, and not to DaimlerChrysler or CCMC.

**TRIP INTERRUPTION, FIRST DAY RENTAL/CAR RENTAL ALLOWANCE, TOWING, AND ROADSIDE ASSISTANCE EXPIRE AT 7 YEARS OR 100,000 MILES ON THE ODOMETER.**

No Dealer, Dealer employee or DaimlerChrysler employee has the authority to modify or change any provision of this Plan.

PAGE 3 OF 6    07-L4M-IC (08/07)

# NEED HELP OR ASSISTANCE WITH YOUR SERVICE CONTRACT? IS YOUR ADDRESS UP-TO-DATE?

**Write to:**
DaimlerChrysler Service Contracts
P. O. Box 2700
Troy, MI 48007-2700

Note:  All requests <u>must</u> contain your Name, Service Contract Number, and Vehicle Identification Number.

Or phone us Toll Free - see hours below:

1-800-521-9922 (in USA)
1-800-465-2001 (in Canada)
1-800-457-4330 (Hearing Impaired)

Toll-Free Telephone Assistance is Available
8:00 a.m. to 5:00 p.m. Monday through Friday

For 24-Hour Roadside Assistance (Including Towing)
**1-800-521-2779**

---

**TRANSFER FORM:**    SEE TRANSFER POLICY FOR DETAILS

| SERVICE CONTRACT NO. | VEHICLE IDENTIFICATION NO. | PLAN CODE |
|---|---|---|
| 32537786 | 2C3LA43R27H877062 | LPM100N |

| THIS AREA MUST BE FILLED IN → | CURRENT ODOMETER READING (OMIT TENTHS) | CHECK MILES OR KILOMETERS |
|---|---|---|
| | | ☐ MILES  ☐ KILOMETERS |

**TRANSFER** — TRANSFER THE REMAINING COVERAGE FOR THE LISTED VEHICLE TO THE PERSON NAMED BELOW. ENCLOSED IS A CHECK OR MONEY ORDER FOR THE TRANSFER FEE AMOUNT.

| TRANSFER FEE AMOUNT | CHECK OR MONEY ORDER ENCLOSED (PAYABLE TO DAIMLERCHRYSLER MOTORS LLC) ☐ VISA ☐ MASTER CARD | CREDIT CARD NO. | EXPIRATION DATE |
|---|---|---|---|
| NAME (PLEASE PRINT) | | AREA CODE & TELEPHONE NO. | |
| ADDRESS | | VEHICLE PURCHASER'S SIGNATURE | DATE OF VEHICLE PURCHASE |
| CITY, STATE & ZIP | | VEHICLE SELLER'S SIGNATURE | |

PAGE 6 OF 6   07-L4M-IC (08/07)

**COVERAGE UNDER THE PLAN: WHAT IS COVERED?** The plan will pay the total cost (parts and labor) less a deductible per visit, to correct any of the following mechanical failures, caused by a defect in materials or workmanship of a covered component and are not covered by the vehicle's factory warranty. The only exceptions are those listed under "What is not covered by the Plan".

**This plan offers comprehensive mechanical coverage for your vehicle. COMPONENTS COVERED BY THE PLAN INCLUDE (BUT ARE NOT LIMITED TO):**

**STEERING:** Steering Gear Housing and all Internal Parts; Power Steering Gear; Power Steering Pump; Steering Shaft Lower Coupling; Rack and Pinion Assembly; Seals and Gaskets.

**AIR CONDITIONING:** Factory or Manufacturer-authorized air conditioning installations only. Air Conditioning Compressor, Clutch, Coil, Condenser, Evaporator, Receiver-Drier, Expansion Valve, Hoses and Lines, Low Pressure Cut-Off Switch, High Pressure Cut-off Switch, Clutch Cycling Switch, Instrument Panel Control Assembly, Power Module, Air Conditioning/Heater Blower Motor; Seals and Gaskets.

**ENGINE COOLING & FUEL:** Cooling Fan, Clutch and Motor; Radiator; Coolant Temperature Switch; Fuel Pump; Water Pump and Housing; Fuel Tank Sending Unit; Fuel Tank and Lines; Serpentine Belt Tensioner; Seals and Gaskets.

**FRONT SUSPENSION:** Struts; Strut Mounting Plates, Bushings and Bearings; Upper and Lower Control Arms; Control Arm Shafts; Control Arm Bushings; Upper and Lower Ball Joints; Front Wheel Bearings.

**REAR SUSPENSION:** Rear Leaf Springs; Rear Coil Springs; Auxiliary Springs; Spring Interliner; Spring Bushing; Spring Shackle; U-Bolt Rear Spring; Spring Hanger; Axle Trac Bar; Lateral Link Arm; Shock Mount Plate; Rear Trailing Arm Assembly; Stabilizer/Sway Bar; Stabilizer/Sway Bar Link; Stabilizer/Sway Bar Bushing;

**ELECTRICAL:** Starter Motor and Solenoid; Generator (Alternator); Engine Control Module - (Single Module Engine Controller) (SMEC); Powertrain Control Module; Distributor; Ignition Coil; Coil Pack Assembly; Voltage Regulator; Horn and Horn Pad; Transmission Control Module.

**EXPANDED ELECTRICAL:** All Wiring Harnesses; Electronic Fuel Injection System (excluding clogged injectors); Windshield Wiper Motor; Rear Window Wiper Motor; Wiper Control Module; Manually Operated Electrical Switches; Park Neutral Position Switch; Temperature Sending Unit/Switch; Oil Pressure Sending Unit/Switch; Body Computer; Body Control Module. Factory Installed Radio and Speakers (Includes CD and Tape Player).

**POWER GROUP:** Rear Window Defroster; Power Window Motors; Power Window Flex Track; Power Antenna; Power Seat Motors; Power Door Locks and Linkage.

**LUXURY GROUP:** Keyless Entry Receiver/Module; Trip Computer; Message Center; Overhead Electronic Vehicle Information Center; Overhead Electronic Compass/Temperature; Power Sunroof Motor; Convertible Top Motor; Electric Mirror Motor and Controls; Cruise Control Servo; Headlight Door Motor; Concealed Headlamp Module.

NOTE: ANY REMOTE TRANSMITTER IS NOT COVERED AT ANY TIME.

**MOPAR ACCESSORIES:** The following Mopar accessories are covered provided they were installed by a DaimlerChrysler authorized facility; Audio Systems (including Compact Disc and Cassette Players); Rear Seat Video System; Air Conditioning Systems; Speed Control; EVS (Security Systems); Clocks; Remote Trunk Release; Power Steering; Remote Control Outside Mirrors; Power Sliding Rear Windows (trucks); Transmission Oil Cooler.

**INSTRUMENTATION:** Electronic Instrument Cluster; Amp/Voltmeter Gauge; Fuel Gauge; Temperature Gauge; Tachometer; Oil Pressure Gauge; Turbo Gauge; Speedometer.

**BRAKES:** Master Cylinder; Assist Booster; Wheel Cylinders; Disc Brake Calipers and Pistons; Brake Lines, Hoses, Fittings; Proportioning Valve; Seals and Gaskets.

NOTE: BRAKE SHOES, PADS, ROTORS, AND DRUMS ARE NOT COVERED AT ANY TIME.

**ANTI-LOCK BRAKES (ABS):** Brake System's Hydraulic Assembly; Pump Motor Assembly; Controller; Sensors and Relays; Seals and Gaskets.

**YOUR RESPONSIBILITY:** Your responsibility is to properly operate, care for and maintain the vehicle as prescribed in the owner's manual supplied by the manufacturer. You should retain all maintenance receipts to avoid any misunderstanding as to whether or not the maintenance services were performed as required.

Depending on circumstances, DaimlerChrysler Service Contracts reserves the right to inspect, investigate, or demand proof of maintenance BEFORE performance of repairs.

**DIAGNOSTIC CHARGES:** You may be asked to authorize disassembly and/or diagnostics at the time your repair order is written. Your DaimlerChrysler Service Contract covers disassembly and/or diagnostic charges IF the cause of failure is a covered component under the terms of the plan. If the repair is not covered by the Plan, you will be responsible for the disassembly and/or diagnostic charges.

**GOVERNING LAW:** Except where prohibited by law, this contract will be governed by Michigan law. Note: Wyoming law is applicable to any contract marketed in Wyoming.

**THE PLAN WILL NOT COVER, OR APPLY TO LOSS OR EXPENSE RESULTING FROM:**

▸ Repairs or replacement of any component covered by the vehicle's factory warranty or recall policies; roadside assistance, loaner vehicles or other services which are eligible to be covered by the vehicle's factory warranty or marketing programs;

▸ Repairs to any vehicle that has become restricted by the manufacturer after the purchase of the Service Contract;

▸ Repair or replacement of any covered component when it has been determined that the condition existed prior to purchasing the contract;

▸ Repairs, Towing, Rental or Roadside Assistance to any vehicle where the odometer (mileage) has been stopped or altered and/or the vehicle's actual mileage cannot be readily determined;

▸ Repairs, Towing, Rental or Roadside Assistance necessary as a result of (a) failure to properly care for or maintain the vehicle; (b) fire, accident, abuse, vandalism, negligence or Act of God including but not limited to any vehicle rendered inoperable due to snow, ice or flood; (c) failure to properly operate the vehicle; (d) vehicles that have been used or are being used for competitive speed events such as races or acceleration trials; (e) pulling a trailer that exceeds the rated capacity of the vehicle or failure to adhere to the requirements for vehicles used to pull a trailer as outlined in the owner manual supplied by the manufacturer; (f) tampering with the emission system or with any parts that could affect that system; (g) use of dirty fluids, or fuels, refrigerants or other fluids which are not recommended by the manufacturer; (h) failure due to fluid contamination or sludge; (i) modifications not approved or recommended by the manufacturer;

▸ Plan service obtained from other than a Chrysler, Dodge or Jeep Dealer unless authorization is first received from DaimlerChrysler Service Contracts; (Dealers cannot authorize repairs.)

▸ Maintenance services - engine oil, lubricant, coolant, fluids, filters, battery and cables, spark plugs and wires, belts, lights (bulb, sealed beams, lenses), engine tune-up, suspension alignment, wheel balancing, wiper blades, exhaust systems, heat shields and exhaust hangers; throttle body cleaning;

▸ Brake pads, shoes, rotors and drums; battery are not covered at any time;

▸ Exterior - tires; body sheet metal; glass; plastic lenses; paint; bright metal; bumpers; side-view mirrors (glass/housing); wheel covers; steel wheels; aluminum wheels; door handles; weather strips; rust; water leaks; wind noises; all outer body panels; spoilers; plastic and fiberglass body parts; vinyl tops; convertible top fabric; repairs or damage caused by environmental factors such as acid rain, tree sap, salt or ocean spray;

▸ Interior - trim; carpet; upholstery; dash pad; door and window handles; knobs; buttons; moldings; arm rests and head liner; cargo cover;

▸ Repairs required as a result of use of other than the vehicle manufacturer's parts;

▸ Repairs to a covered component caused by the failure of a non-covered component and/or an aftermarket installation not performed by an Authorized DaimlerChrysler Dealer, or any outside installation of "salvage or junk" components in conjunction with an insurance or damage claim. All part installations to satisfy such claims must be with new or factory authorized remanufactured components and parts;

▸ Bodily injury or property damage arising or allegedly arising out of a defect in the design, manufacturer, materials or workmanship of a covered component;

▸ Any fines, fees or taxes which are associated with impound towing as a result of actual or alleged violation of any laws or regulations;

▸ Repairs, Towing, Rental or Roadside Assistance to vehicles registered and/or operated outside of the 50 States, the District of Columbia, Canada, Guam, Puerto Rico and Mexico;

▸ Mechanical - manual clutch assembly; repairs to snow plows, winches and trailer hitches regardless of their installation; damage to flywheel as a result of clutch failure;

▸ Shop supplies and materials;

▸ **Loss of use of the vehicle, loss of time, inconvenience, commercial loss, or any incidental or consequential damages.**

**CANCELLATION AND TRANSFER POLICIES:** During the term of the service contract, you have the option to:

- **CANCEL** the remaining Plan coverage and receive a full or pro-rata refund.

Note: Refer to the cancellation/transfer policy section below for details.

**CANCELLATION POLICY:** If you are the original purchaser of the Plan, you may cancel this Plan. *To cancel the Plan, you may take your Plan Provisions to any authorized DaimlerChrysler Dealer.* The dealership will contact DaimlerChrysler Service Contracts to request termination of your contract.

If your vehicle is repossessed or rendered a total loss and your Plan was financed with your vehicle, the lienholder may request your refund. The lienholder is then responsible for requesting termination of the contract through the Dealer where the Plan was purchased. If the Plan was not financed, any refund due will be paid to you by check in your name from DaimlerChrysler.

If there is no authorized DaimlerChrysler Dealer in your area, mail your cancellation request along with your Plan Provisions, proof of payoff and current mileage on the vehicle to:

DAIMLERCHRYSLER SERVICE CONTRACTS
CANCELLATION DEPARTMENT
P.O. BOX 2700
TROY, MI 48007-2700

On cancellation requests received within the first 60 days from the original purchase date of the plan, you will be refunded the full amount you paid for the Plan, provided no claims have been paid against the contract. In the event claims have been paid, or requests received after 60 days, your refund will be based on the full amount you paid for the Plan, less a pro-rata adjustment for time or mileage used, whichever is greater, less a cancellation rate/fee as indicated below. The pro-rata refund calculation will be based on terms of 7 years or 100,000 miles. After 7 years or 100,000 miles, your refund will be in the amount of $25.

We reserve the right to cancel the Plan after issuance should it be discovered that: (a) the vehicle is ineligible or has been modified/altered to make it ineligible after Plan coverage has been in effect; (b) failure of the customer to maintain the vehicle as prescribed by the manufacturer; (c) the odometer has been tampered with or has not been repaired by the customer, or (d) non-payment of premium. Your refund will be based on the full amount you paid for the Plan, less a pro-rata adjustment as set forth in the paragraph above.

**NOTES:**

- *Requests Received* - The pro-rata refund cancellation will be based on the date DaimlerChrysler Service Contracts receives written notification of the cancellation request.

- All refund checks after 7 years or 100,000 miles on the odometer will be $25.

**TRANSFER POLICY:** This plan is non-transferable to subsequent owners or lessees, even if they are within the same family or business **except in the state of North Carolina.**

**STATE OF NORTH CAROLINA ONLY:** The original purchaser may authorize transfer of coverage, provided the Plan has not been canceled. Remaining Plan coverage may be transferred to the first subsequent purchaser of the vehicle AT TIME OF VEHICLE SALE ONLY. Thereafter, the Plan is non-transferable and non-cancelable.

To transfer this service contract, complete the transfer form. Be sure to include your signature. This means you are authorizing transfer of Plan coverage to the new owner. Transfer requests will not be processed: (a) without the signature of the owner for whom these Plan Provisions were originally issued; or (b) if received after 60 days from the date of vehicle ownership change.

The DaimlerChrysler Service Contract transfer fee is as follows:

| TRANSFER FEES | |
|---|---|
| (Applies to the state where the Plan was purchased) | |
| STATE | AMOUNT |
| North Carolina | $50 |

| SPECIAL STATE NOTICES |
|---|
| IOWA |
| If you have any questions or complaints concerning this service contract, they may be addressed to: |
| Commissioner of Insurance |
| Iowa Insurance Division |
| Lucas State Office Building |
| Des Moines, IA 50319 |

| CANCELLATION FEES | |
|---|---|
| (Applies to the state where the Plan was purchased) | |
| STATE | AMOUNT |
| Alabama | $25 Administration Fee. |
| California | $25 or 10% of the Contract Cost, whichever is less. |
| Hawaii | $50 Administration Fee. |
| Illinois | $50 or 10% of the Contract Cost, whichever is less. |
| New Hampshire | None. |
| New York | $50 Administration Fee. |
| North Carolina | $50 or 10% of the pro-rata refund amount, whichever is less. |
| Georgia | 90% of the unearned pro-rata premium – no Administration Fee. |
| Oklahoma | 90% of the unearned pro-rata premium not to exceed $75. If we cancel, 100% of the unearned pro-rata premium will be refunded. |
| All others | $75 Administration Fee. |

Note: Plans sold beyond 12 months or 12,000 miles from the original in-service date and within 48,000 miles have a surcharge applied to the Plan cost. $150 of the applicable surcharge is non-refundable after 60 days from the Plan sale date. This statement does not apply to Florida, New Hampshire, Washington or Arizona.


*service Contracts*
DaimlerChrysler

# DAIMLERCHRYSLER SERVICE CONTRACT APPLICATION

## VEHICLE AND PURCHASER INFORMATION

| VEHICLE ID NUMBER | YEAR / MAKE / MODEL | ODOMETER AND TYPE | MILES | KM | IN SERVICE DATE |
|---|---|---|---|---|---|
| 2C3LA43R27H877062 | 2007 CHRY 300 | 602 | XX ☐ | ☐ | 09-14-07 |

PRIMARY PURCHASER'S FIRST & LAST NAME OR COMPANY NAME
☐ MR   ☐ MRS  XX ☐ MS   ☐ OTHER _____ THELMA M PANNELL

OPTION SALE DATE
09-26-2007

SECONDARY PURCHASER FIRST & LAST NAME
☐ MR   ☐ MRS   ☐ MS   ☐ OTHER _____

PRIMARY PURCHASER'S EMAIL ADDRESS

| PRIMARY PURCHASER'S ADDRESS | STATE | ZIP | PHONE NUMBER |
|---|---|---|---|
| 19 MONROE PL APT B   MONTCLAIR | NJ | 07042-4618 | XX H W C (973)655-9488 |

PHONE NUMBER
H  XX W  C (973)568-8070

## COVERAGE INFORMATION

| PROGRAM NAME/TERM | OPTION CODE/ DEDUCTIBLE | CUSTOMER PAID AMOUNT | SALES TAX | TOTAL | NC FLAG | PAYMENT METHOD | AMOUNT DOWN | AMOUNT FINANCED |
|---|---|---|---|---|---|---|---|---|
| CHRYSLER | LPM100N 100 DEDUCTIBLE | 1790.00 | 125.30 | 1915.30 | R | D | | 1915.3 |
| | DEDUCTIBLE | N/A | N/A | N/A | | | | |
| | DEDUCTIBLE | N/A | N/A | N/A | | | | 1500 |
| | DEDUCTIBLE | N/A | N/A | N/A | | | 12 py x 11 | 95 |
| **TOTALS** | | 1790.00 | 125.30 | 1915.30 | | | | 95 |

EMPLOYEE PURCHASE   ☐ YES   ☐ NO

CHECK BOX IF TAX EXEMPT ☐

PAYMENT METHOD KEY
C CASH        B FINANCED W/VEHICLE
A DLR PAYMENT PLAN  R. RAPID REMIT

NO CHARGE METHOD KEY
D. DEALER INCENTIVE
P PART OF PACKAGE

THE TIME AND MILEAGE LIMITS OF ALL NEW VEHICLE PLANS BEGIN
THE DATE THE VEHICLE WAS FIRST PUT IN SERVICE AT "0" MILES

FINANCE SOURCE (COMPLETE ONLY IF FINANCED WITH VEHICLE)

**IMPORTANT NOTICE TO PURCHASER......**

Your signature means the plan and the actual service contract indicated above has been reviewed by you and, if your application is approved by DaimlerChrysler Service Contracts, you accept its terms and conditions.

Pre-Owned vehicle plans **MUST** be purchased at time of vehicle sale or within the 3 month / 3,000 mile Limited Warranty period.

This service contract is not required to purchase or finance a motor vehicle. New and Pre-owned vehicle service contracts are transferable to subsequent purchasers prior to expiration date or mileage with contract owner's authorization.

*NOTE: WHEN THERE IS AN EXISTING WARRANTY ON A VEHICLE, THE CONTRACT TERM **WILL INCLUDE** THE WARRANTY PERIOD. REFER TO YOUR CONTRACT PROVISIONS FOR A DEFINITION OF "IN-SERVICE" DATE.

DATE 09 26 2007      PURCHASER'S SIGNATURE X _____

## DEALER INFORMATION

| DEALERSHIP NAME | | TELEPHONE NO |
|---|---|---|
| CHRYSLER PLYMOUTH OF PARAMUS INC. | BASSO, DANIEL | (201 845-0700 |

| STREET ADDRESS | CITY, STATE & ZIP | | ZONE CD | DEALER CODE |
|---|---|---|---|---|
| 234 RT 4 EAST | PARAMUS, NJ   07652 | | 32 | 58277 |

**IMPORTANT NOTICE TO DEALER......**

Your signature on this form signifies that: (1) This vehicle qualifies for the service contract, (2) You have reviewed the service contract with the purchaser, (3) You have delivered a copy of this form to the purchaser for the amount you have recorded on the form; (4) You will provide service to the purchaser in accordance with the provisions of the service contract DaimlerChrysler will issue to the purchaser; (5) You have reviewed the DaimlerChrysler Service Contracts Dealer Guide and agree to abide by the policies and procedures specified therein. (6) DaimlerChrysler may set off any money it owes you to reimburse for any claim due to a breach of representations

| SALESPERSON NAME | AUTHORIZED DEALER SIGNATURE X | DATE 09 26 2007 |
|---|---|---|
| D. BASS | | |

**IMPORTANT!** The following vehicles are not eligible for a DaimlerChrysler Service Contract: Vehicles equipped with a right hand drive, motor homes, vehicles placed in taxi or limousine service (except vehicles placed in van pool service), vehicles used for emergency service, ambulance, towing or police service (except DaimlerChrysler vehicles equipped for police pursuit applications), vehicles used for postal dump truck, snow plow (unless equipped with sales package "AHD") or severe off-road use, vehicles converted from two to four-wheel-drive, vehicles altered or converted from the original manufacturer's specifications, vehicles not used in accordance with manufacturer's specifications for payload and/or towing capacity; vehicles equipped with a diesel engine (except DaimlerChrysler), vehicles that operate on other than Gasoline E85 or Diesel Fuel Systems (i.e. natural gas, electric, hybrid gas/electric vehicles), vehicles with a gross weight (G.V.W.) of over 14,000 pounds; vehicles where the factory warranty has been voided or restricted by the manufacturer; vehicles that have been declared to be a total loss by any insurance company, is rebuilt after being declared a total loss, or is issued a title indicating that it is designated as salvage 'junk, 'rebuilt' or words of similar impact.

NOTE: Retain this form as evidence you have applied for the plan(s) indicated above. The Dealer will transmit this data to DaimlerChrysler. DaimlerChrysler Service Contracts will notify you of acceptance by mailing your Plan Provisions. IF YOU HAVE NOT RECEIVED YOUR PLAN PROVISIONS WITHIN 60 DAYS, PHONE THE TOLL FREE NUMBER LISTED BELOW. This document is an application for the DaimlerChrysler Service Contract and does not constitute a service contract until accepted by DaimlerChrysler Service Contracts.

TOLL-FREE TELEPHONE ASSISTANCE IS AVAILABLE
8:30 A.M. THRU NOON OR 1:00 P.M. THRU 5:00 P.M. EASTERN TIME MONDAY THRU FRIDAY.
**1-800-521-9922  www.servicecontracts.daimlerchrysler.com**

CA LIC # 0E65799
FL LIC # 60029

**TRANSMIT VIA DEALERCONNECT TO:** DaimlerChrysler Service Contract • P.O. Box 2700 • Troy, MI 48007-2700

(81-770-3012) (Rev. 1/07) DaimlerChrysler Corporation
(81-770-3012) (Rev-1) DaimlerChrysler Motors Company LLC

COPIES: #1 (BLACK) DEALERCONNECT ENTRY DOCUMENT
#2 (GREEN) FINANCE SOURCE (IF ANY)
#3 (BROWN) TO OWNER